UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

Case No.: 1:23-cv-00063-AW-ZCB

DANIEL D. FINK, individually and as
Personal Representative of the Estate of
CALEB D. FINK, deceased, for the
benefit of his survivors and the Estate,

     Plaintiff,

vs.

ALACHUA COUNTY SHERIFF'S OFFICE;
WELLPATH, LLC a foreign limited liability company;
NURSES JANE DOES and NURSES JOHN DOES 1-10,
individually and as employees of WELLPATH, LLC;
CLOVIS WATSON JR., in his official capacity as
Sheriff of Alachua County, Florida; MAJOR ROBERT
STAFFORD, in his supervisor role as jail director; and
DEPUTIES JOHN and DEPUTIES MARY DOES 1-10,
individually and as an employee or agent of the
Alachua County Sheriff's Office,

     Defendants.

_____/

## DEFENDANT WELLPATH, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant, WELLPATH, LLC ("Wellpath"), by and through its undersigned

counsel and pursuant to Rules 8(a)(2), 10(b), and 12(b)(6), Federal Rules of Civil

Procedure, and Northern District of Florida Local Rule 7.1, hereby moves to dismiss

Plaintiff's Complaint (DE 1) and states as follows in support thereof:

1

1.	This action arises out of Caleb D. Fink's suicide by hanging himself with a sheet in his cell at the Alachua County Jail.  (DE 1, ¶¶ 1, 4).

2.	Although Plaintiff, Daniel D. Fink, individually and as Personal Representative of the Estate of Caleb D. Fink., sued a plethora of Defendants, including NURSES JANE DOES and NURSES JOHN DOES 1-10, individually and as employees of Wellpath (hereinafter the "Doe Nurses"), the Court has already dismissed the claims against most of the other Defendants, including the Doe Nurses and other fictitious Defendants.  (*See* DE 30, 31).

3.	As to Wellpath, Plaintiff alleges that Wellpath contracted to provide health services to people detained and/or incarcerated within the subject correctional facility.  (DE 1, ¶ 15).

4.	In the Complaint, Plaintiff asserts the following claims against Wellpath: (1) medical negligence (direct and vicarious liability) under Florida law (Count I); (2) deliberate indifference to serious medical and mental health needs in violation of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 (Count III)[1]; and (3) custom, policy, or practice causing constitutional violations, pursuant to 42 U.S.C. § 1983 (Count IV).[2]

---

[1] The claim in Count III is asserted against all originally named Defendants.
[2] The claim in Count IV is asserted against both Wellpath and Defendant, CLOVIS WATSON JR., in his official capacity as Sheriff of Alachua County, Florida ("Sheriff Watson").

5. Plaintiff asserts a "wrongful death" claim under Florida law in Count V, and while Wellpath's name is referenced in the bold heading of that count (*see* DE 1, p. 30)[3], it appears that Plaintiff intends to assert the claim only against "the Individual Defendants," as an alternative claim, assuming "for purposes of this count, at pertinent times the Individual Defendants were acting outside the scope of their employment by … WELLPATH." (*Id.*, ¶¶ 78, 79). Accordingly, Wellpath does not address the claim in Count V for purposes of this Motion.

5. As discussed in more detail in the below Memorandum of Law, which is incorporated herein by reference, Plaintiff's Complaint against Wellpath should be dismissed because: (1) Plaintiff failed to comply with the statutory presuit requirements that are a condition precedent to the medical negligence claim in Count I; (2) the claims in Counts III and IV constitute impermissible shotgun pleading; and (3) the § 1983 claims in Counts III and IV fail to state a claim against Wellpath upon which relief can be granted.

## MEMORANDUM OF LAW

## I. Standards for Pleading and Dismissal

---

[3] The Count V heading states the claim is asserted against, among other persons, "WELLPATH LLC NURSES JANE DOES and NURSES JOHN DOES 1-10." (DE 1, p. 30). There is no comma after "WELLPATH LLC," and Plaintiff alleges that the Doe Nurses were "nurses employed by" Wellpath. (*Id.*, ¶ 16). Plaintiff's Complaint also purports to sue the Doe Nurses "individually and as employees of" Wellpath. (*Id.*, p. 1-2).

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . …" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). When determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

However, the Court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival*

*Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).  A plaintiff's complaint must be dismissed if the facts alleged "have not nudged [its] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

## II. Plaintiff's Medical Negligence Claim in Count I Should Be Dismissed for Plaintiff's Failure to Comply with the Statutory Presuit Requirements of Chapter 766, Florida Statutes.

In Count I of the Complaint, Plaintiff purports to assert a Florida state law medical negligence claim against Wellpath for both direct and vicarious liability. The Legislature has defined a claim for medical negligence or medical malpractice as "a claim, arising out of the rendering of, or the failure to render, medical care or services."  § 766.106(1)(a), Fla. Stat.; *Nat'l Deaf Acad., LLC v. Townes*, 242 So. 3d 303, 309 (Fla. 2018).  Proving a medical malpractice claim requires establishing that the allegedly negligent act "represented a breach of the prevailing professional standard of care," as testified to by a qualified medical expert.  *See* §§ 766.102(1), (5), Fla. Stat.; *Townes*, 242 So. 3d at 309.  A claim sounds in medical malpractice when the act from which the claim arises is "directly related to medical care or services, which require the use of professional judgment or skill."  *Townes*, 242 So. 3d at 311.

Pursuant to § 766.203(1), Fla. Stat., presuit investigation requirements apply to all medical negligence claims, a term which is defined as "medical malpractice, whether grounded in tort or in contract."  § 766.202(7), Fla. Stat.; *Integrated Health*

5

*Care Servs., Inc. v. Lang-Redway*, 840 So. 2d 974, 977 (Fla. 2002). The claimant bringing such an action must investigate and corroborate that there are reasonable grounds to believe that all named defendants were negligent in the care and treatment and that such negligence resulted in the claimant's injury. *See* § 766.203, Fla. Stat.; *Lang-Redway*, 840 So. 2d at 977. After the claimant completes the presuit investigation, he or she must then notify each prospective defendant of the intent to initiate litigation prior to filing a claim for medical malpractice. *See* § 766.106, Fla. Stat.; *Lang-Redway*, 840 So. 2d at 977.

Here, Plaintiff's alleged medical negligence claim against Wellpath arises out of the rendering of, or failure to render, medical care and services, which require the use of professional judgment or skill. (*See, e.g.*, DE 1, ¶¶ 16, 59, 62.a.-p.) To prevail on the claim, Plaintiff would have to establish that Wellpath's (or its employees' or agents') alleged acts or omissions represented a breach of the prevailing professional standard of care, as testified to by a qualified medical expert. Accordingly, the presuit requirements in Chapter 766, Florida Statutes, apply to Plaintiff's medical negligence claim asserted in Count I of the Complaint.

Although Plaintiff alleges that she complied with all conditions precedent "prior to bringing this action; including, but not limited to, Section 768.28 and Chapter 766, Florida Statutes" (DE 1, ¶ 9), Plaintiff did not, in fact, comply with the presuit requirements in Chapter 766, Florida Statutes, prior to filing her Complaint.

In her more specific allegations concerning conditions precedent (DE 1, ¶¶ 11-12), Plaintiff does not mention any of the Chapter 766 requirements or compliance therewith. In addition, the Complaint does not include a certification from Plaintiff's counsel that he conducted the requisite presuit investigation. *See* § 766.104(1), Fla. Stat. Moreover, Plaintiff did not serve Wellpath with a notice of intent to initiate medical negligence litigation, as required by § 766.106, Fla. Stat., or with a corroborating opinion from a qualified medical expert, as required by § 766.203, Fla. Stat. It does not appear that Plaintiff conducted the requisite presuit investigation described in § 766.104, Fla. Stat., as the Complaint was filed on March 22, 2023, but Plaintiff did not even request Caleb Fink's medical records until April 17, 2023, after filing the Complaint including the medical malpractice claim.

Plaintiff has failed to comply with the presuit requirements set forth in Chapter 766, Florida Statutes, and, therefore, his state law medical malpractice claim asserted in Count I of the Complaint should be dismissed. *See* § 766.206, Fla. Stat.; *Johnson v. McNeil*, 278 Fed. Appx. 866, 871-72 (11th Cir. 2008).

## III. Counts III and IV Should Be Dismissed Because They Constitute Impermissible Shotgun Pleading.

"A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)). Rule 8(a)(2) requires the complaint to provide "a short

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "If doing so would promote clarity," Rule 10(b) also requires that "each claim founded on a separate transaction or occurrence … be stated in a separate count … ." *Id.* "The 'self-evident' purpose of these rules is 'to require the pleader to present his claims discretely and succinctly, so that[ ] his adversary can discern what he is claiming and frame a responsive pleading.'" *Barmapov*, 986 F.3d at 1324 (quoting *Weiland*, 792 F.3d at 1320) (additional citation omitted). "These rules were also written for the benefit of the court, which must be able to determine 'which facts support which claims,' 'whether the plaintiff has stated any claims upon which relief can be granted,' and whether evidence introduced at trial is relevant." *Barmapov*, 986 F.3d at 1324 (quoting *Weiland*, 792 F.3d at 1320) (additional citation omitted). The Eleventh Circuit has "little tolerance" for shotgun pleadings, *Barmapov*, 986 F.3d at 1324 (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)).

The Eleventh Circuit has identified "four rough types or categories" of shotgun pleadings. *Weiland*, 792 F.3d at 1321. The first is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be

a combination of the entire complaint." *Id.* The second is a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321-22. The third is a complaint that does "not separate[e] into a different count each cause of action or claim for relief." *Id.* at 1322-23. The fourth is a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. The "unifying characteristic" of all four types is that "they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

Plaintiff's Complaint commits at least three of the four "sins" represented by the four types of shotgun pleadings. *See Weiland*, 792 F.3d at 1321. As to the first, two of the three counts in the Complaint directed against Wellpath (Counts III and IV) incorporate not only all of the preliminary allegations common to all counts, but also all of the allegations in all of the preceding counts, regardless of which Defendants such counts are directed against. (DE 1, ¶¶ 67, 75). Thus, Count III, which itself is directed against all of the Defendants, also incorporates all of the allegations of each of the preceding counts asserted in the Complaint, including the claims asserted in Count II against other Defendants. Count IV likewise incorporates all of the preceding counts. Because of the manner in which Plaintiff

has pled the claims, it is impossible to determine which allegations are particular to which claim(s) and which of the twenty-five different named Defendants. Thus, the Complaint commits the first sin because every count repeats and realleges all preceding counts and their allegations. *In re Mednax Servs., Inc., Customer Data Security Breach Litigation*, No. 21-MD-02994-RAR, 2022 WL 1468057, at *12 (S.D. Fla. May 10, 2022). "This is forbidden. The Eleventh Circuit has relieved district courts of having to divine which cumulatively incorporated factual allegations and legal conclusions are relevant to a given count. … Plaintiffs must specifically articulate which facts and law go with which counts." *Id.*

As to the second sin, the Complaint is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. Plaintiff's Complaint in this case "indiscriminately incorporates and repeats" numerous paragraphs of allegations into each of the counts asserted against Wellpath "without any effort to connect or separate which of those … factual allegations relate to a particular count." *Barmapov*, 986 F.3d at 1325. As a result, each count includes numerous factual allegations that are immaterial to the underlying causes of action. *See id.*; *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997) (describing a complaint in which four counts incorporated all 43 numbered paragraphs of factual allegations, many of which appeared to relate to only one or two counts, as "an all-too-typical shotgun pleading"); *Weiland*, 792 F.3d

at 1322 n.12 (identifying *Chudasama* as an example of the second type of shotgun pleading). For example, the two § 1983 claims asserted against Wellpath in Counts III and IV also incorporate all of the allegations pertaining to Sheriff Watson, John and Mary Doe deputies of the Alachua County Sheriff's Office, and Major Robert Stafford, in his supervisor role as jail director, none of which allegations are pertinent to the claims against Wellpath. Such allegations are incorporated wholesale into the claims against Wellpath, with no indication regarding how such allegations pertain to the claims against Wellpath.

Finally, the Complaint commits the fourth sin as well in that it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Weiland*, 792 F.3d at 1323. As noted above, Count III is asserted against all originally named Defendants, and Count IV is asserted against both Sheriff Watson and Wellpath. In both the preliminary allegations incorporated into each count and in each of the counts directed against Wellpath, Plaintiff lobs many conclusory allegations against the various Defendants (or some subset of them) collectively, instead of alleging facts that are specific to each of the Defendants against whom the counts are alleged. (*See* DE 1, ¶¶ 25, 32, 33, 35, 36, 41, 42, 43, 47-55, 68, 70-74, 76). Plaintiff fails to attribute any particular alleged act or omission to Wellpath distinctly.

Plaintiff's manner of pleading described above is a hallmark representation of the fourth type of shotgun pleading. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of."); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir. 1997) (describing a complaint that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants" as a "prototypical 'shotgun complaint'"); *Weiland*, 792 F.3d at 1323 n.14 (identifying *Magluta* and *Ebrahimi* as examples of the fourth type of shotgun pleading).

Because Plaintiff's Complaint is an impermissible shotgun pleading, it should be dismissed. *See Barmapov*, 986 F.3d at 1326 (affirming this Court's dismissal with prejudice of a shotgun pleading); *James River Ins. Co. v. O'Gallagher LLC*, 340 F.R.D. 471, 473 (S.D. Fla. 2022) (citing *Vibe Micro*, 878 F.3d at 1295).

## IV. <u>Counts III and IV Fail to State a § 1983 Claim Against Wellpath.</u>

For purposes of § 1983 claims, the Eleventh Circuit has held that the *Monell*[4] rationale applies to private entities acting in the place of a municipality. *See Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). The Eleventh Circuit has further

---

[4] *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658 (1978).

determined that when a private entity contracts with a government to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state. *See id.* "In so doing, it becomes the functional equivalent of the municipality." *Id.* Here, Plaintiff has alleged that Caleb Fink was in custody at the Alachua County Jail, serving a sentence of 110 days for which he was given credit for 50 days time-served, and that Wellpath was contracted to provide health services to people detained and/or incarcerated within that correctional facility. (DE 1, ¶¶ 15, 27). Accordingly, the *Monell* principles and requirements apply to Plaintiff's § 1983 claims against Wellpath, based on Plaintiff's allegations directed against Wellpath.

A municipality (or other entity performing a municipal function) may be held liable under § 1983 only when the constitutional deprivation was undertaken pursuant to a policy or custom; respondeat superior is not an appropriate basis for suit. *Pembaur v. Cincinnati*, 475 U.S. 469, 478-81 (1986); *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 694 (1978). "[R]ecovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur*, 475 U.S. at 480. Thus, a plaintiff wishing to recover under § 1983 must properly allege: (1) a policy or custom; or (2) a failure to train or supervise, arguably a kind of policy or custom claim.

Alternatively, "municipal liability may [also] attach to a single decision made by a municipal official if that municipal official is the final policymaker for the municipality with respect to the subject matter in question." *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir. 1989). In such an instance, "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483.

### A.     <u>Policy, Custom, or Practice</u>

A municipal act rising to the level of a policy or custom can be established in one of three ways: (1) an express policy, (2) a widespread practice that is so well-settled and permanent as to constitute a custom, or (3) the act or decision of an official with final policymaking authority. *Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 966-68 (11th Cir. 2002). A policy or custom has been further defined as a "deeply imbedded traditional way[ ] of carrying out policy," *Fundiller v. Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985), or the tacit authorization or display of deliberate indifference towards misconduct, *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (citation omitted). The "official policy or custom must be the moving force of the constitutional violation in order to establish liability of a

government body under [Section] 1983." *Gilmere v. City of Atlanta*, 737 F.2d 894, 901 (11th Cir. 1984).

Plaintiff does not allege *facts* establishing that Wellpath had any policy, custom, or widespread practice that was responsible for Caleb Fink's death. Plaintiff's allegations regarding policies, practices, and customs mostly consist of conclusory assertions. For example, as alluded to above in the argument regarding Plaintiff's shotgun pleading, most of the preliminary allegations pertaining to alleged policies, customs, or practices are directed against multiple Defendants and do not distinguish between Wellpath and other Defendants. (*See* DE 1, ¶¶ 6-7, 47-55). As one specific example, Plaintiff alleges "Defendants WATSON JR., ACSO, STAFFORD and WELLPATH have maintained a policy, practice and/or custom of providing untimely assessment, identification and treatment of inmates' medical and mental health needs, in disregard of known, obvious and excessive risks to the health and safety of inmates like Mr. FINK." (*Id.*, ¶ 49). The other preliminary allegations are equally conclusory and fail to allege any policy, practice, or custom specific to Wellpath, as opposed to the other Defendants against whom the allegations are directed.

Within the body of Count III, which is couched as a deliberate indifference claim, Plaintiff does not include allegations pertaining to any alleged policy, practice, or custom of Wellpath. (*See* DE 1, ¶¶ 68-74). Rather, to the extent the

claim in Count III is directed against Wellpath (apart from the other Defendants), it appears to be an attempt to impose § 1983 liability upon Wellpath based on the alleged acts or omissions of its alleged employees, the Doe Nurses, under a *respondeat superior* theory.

In Count IV, which is asserted against Defendant, Sheriff Watson, and Wellpath, Plaintiff labels the claim as "FOR CUSTOM, POLICY, OR PRACTICE CAUSING CONSTITUTIONAL VIOLATIONS." (DE 1, p. 28). Count IV merely incorporates all prior allegations (*see* DE 1, ¶ 75) and includes one additional paragraph prior to the *ad damnum* clause:

> At all times relevant, Defendants [Sheriff Watson] and WELLPATH, and each of them separately, promulgated and maintained a de facto unconstitutional custom, policy, or practice of permitting, ignoring, and condoning and/or encouraging officers, deputies, nurses, physicians, medical and mental health personnel, and other employees and agents to deny inmates necessary medical and mental health assessment, evaluation, care, intervention, referral, medication and treatment, forcing them to endure and suffered [sic] extreme physical, mental, and emotional pain and suffering, injury, and in the instant matter the untimely death of the deceased, CALEB D. FINK. These customs, policies and/or practices were the direct and proximate cause of the Constitutional violations visited upon, and the injuries of the deceased, CALEB D. FINK and each of Defendants, [Sheriff Watson] and WELLPATH acting in accordance with these customs, policies, or practices used [sic] are extremely unreasonable, outrageous, and impermissible to an mentally unstable and physically exhausted inmate in desperate need of assessment, observation and treatment absent which shocks the conscience and offends traditional notions of decency.

(*Id.*, ¶ 76).  The allegation in paragraph 76 is conclusory and unsupported by factual allegations substantiating the existence of any policy, custom, or practice of Wellpath that caused the alleged constitutional violation.

Plaintiff's allegations, included in both within the body of Counts III and IV and in the preliminary allegations, do not establish a policy or custom of deliberate indifference on the part of Wellpath.  Plaintiff's conclusory allegations with respect to Wellpath in Counts III and IV are insufficient to withstand a Rule 12(b)(6) motion to dismiss.  *See Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1272 (S.D. Fla. 2015) (stating that "naked, conclusory assertion" of a policy or custom "is supported by no more than the allegations of the four instances of improper DAVID access by City employees" and that "[t]his is not enough to satisfy the pleading standard on a Rule 12(b)(6) motion to dismiss, as Watts is required to allege specific facts detailing a widespread policy or custom, not just a couple of incidents and a conclusory assertion.").  As the *Watts* Court noted, "[i]t is well known municipal liability under section 1983 is hard to establish.  The test is purposefully difficult, lest a loosening of the standard effectively created a *respondeat superior* regime of liability— something *Monell* and its progeny expressly sought to avoid." *Id.* at 1273.  In sum, Plaintiff fails to raise his § 1983 claims against Wellpath in Counts III and IV above the speculative level, *see Hargis v. City of Orlando*, No. 6:12-CV-723-Orl-37KRS,

2012 WL 6089715, at *5 (M.D. Fla. Dec. 7, 2012), and those claims should be dismissed.

**B.** **Failure to Train**

Although Plaintiff does not allege a failure to train in a discrete claim or count, Plaintiff's preliminary allegations incorporated into Counts III and IV include some generic, conclusory allegations pertaining to training. Section 1983 liability for failure to train will only be imposed on a municipality where the municipality "inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)). Failure to train or supervise is only a policy when deliberate indifference is evidenced. *City of Canton*, 489 U.S. at 388. To establish deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). As such, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (internal citations omitted).

18

Here, Plaintiff's allegations regarding an alleged failure to train are scant and conclusory. For example, Plaintiff alleges:

> Defendants WATSON JR., ALACHUA County Sheriff's Office, and WELLPATH have failed to adequately train Jail personnel and staff with respect to the proper assessment, classification, and treatment of inmates with serious mental health needs and/or head trauma. This failure to train constitutes deliberate indifference to the health and safety of inmates like Mr. FINK.

(DE 1, ¶ 53). Plaintiff further alleges that "[i]t is clear that Defendants were not properly trained in dealing with potential suicides and that Defendants' policies were inappropriate." (*Id.*, ¶ 54). Plaintiff also alleges:

> Defendants WATSON JR., ALACHUA County Sheriff's Office, and WELLPATH and [sic] have been, on notice that their policies, practices and/or customs are inadequate to meet the medical and mental health needs of inmates like Mr. FINK. Nonetheless, Defendants WATSON JR., ALACHUA County Sheriff's Office, and WELLPATH have failed to reform those policies, practices and/or customs.

(*Id.*, ¶ 55).

Such allegations constitute shotgun pleading against multiple Defendants and are conclusory. In sum,

> Plaintiff does not allege what kind of training or supervision was in place, what events or incidents occurred that would put Defendants on notice of the need for more or different training or supervision to meet the deliberate indifference requirement, or how the training and supervision at the time caused the alleged deprivation of his rights. While detailed factual allegations are not required, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), something more than legal conclusions, which are not entitled to the presumption of truth, must be alleged to withstand a motion to dismiss.

*Hargis*, 2012 WL 6089715, at *6. As Plaintiff fails to state a claim for relief on either custom or policy or failure to train or supervise theories, the § 1983 claims against Wellpath in Counts III and IV of the Complaint should be dismissed.

### C.     **Deliberate Indifference**

In Count III, Plaintiff attempts to assert a § 1983 against all of the Defendants, including Wellpath, for deliberate indifference to serious medical and mental health needs. To state a claim for deliberate indifference against Wellpath in the absence of a policy, custom, or practice, or a failure to train or supervise, Plaintiff must allege facts establishing that Caleb Fink had a serious medical or mental health need, that a final policymaker for Wellpath was deliberately indifferent to that need, and that Caleb Fink's injury was caused by such deliberate indifference. *See Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010) (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)). To prove that Wellpath was deliberately indifferent to Caleb Fink's serious medical need, Plaintiff must prove "'(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence.'" *See id.* (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (alteration in original) (internal quotation marks omitted)). "[A] claim of deliberate indifference requires proof of more than gross negligence." *Id.* (citation omitted). Indeed, to rise to the level of deliberate indifference, the medical treatment (or alleged lack thereof) in question must be "so

grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).

For the subjective knowledge component, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "No liability arises for 'an official's failure to alleviate a significant risk that he should have perceived but did not.'" *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (quoting *Farmer*, 511 U.S. at 838). Importantly, "*imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference*," thus, "*[e]ach individual Defendant must be judged separately and on the basis of what that person knows*." *Burnette*, 533 F.3d at 1331 (citation and footnote omitted) (emphasis added). Here, it is impossible for Plaintiff to maintain such a claim because Plaintiff's manner of pleading does not distinguish what Wellpath knew and did or failed to do from any of the other Defendants. (*See* DE 1, ¶¶ 25, 32-36, 38, 41-43, 47-55).

In order to state a claim for deliberate indifference, Plaintiff must allege facts demonstrating that Wellpath's final policymaker had knowledge of Caleb Fink's need for medical care and *intentionally refused* to provide that care. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985). Under the deliberate

indifference standard, "an inadvertent failure to provide adequate medical care" does not properly state a claim under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Coley v. Wexford Health Sources, Inc.*, No. 06-61239-CIV, 2007 WL 4365597, at *10 (S.D. Fla. Dec. 13, 2007). Here, Plaintiff has failed to allege facts indicating that a final decision-maker of Wellpath had subjective knowledge of a risk of serious harm to Caleb Fink and disregarded that risk of serious harm by conduct that is more than gross negligence. *See Townsend*, 601 F.3d at 1158. Accordingly, Plaintiff's deliberate indifference claim in Count III fails to state a claim against Wellpath for this additional reason.

## CONCLUSION

For the foregoing reasons, the claims asserted against Wellpath in Counts I, III, and IV of the Complaint should be dismissed.

WHEREFORE, Defendant, Wellpath, respectfully requests that this Honorable Court enter an Order granting this Motion, dismissing Plaintiff's Complaint against Wellpath (DE 1), and providing any further relief the Court deems just and appropriate.

## COMPLIANCE WITH LOCAL RULE 7.1 (D) AND (F)

Pursuant to Local Rule 7.1(D), an attorney conference and certificate are not required for the instant motion as the same would determine the outcome of a case

or claim. The foregoing memorandum complies with Local Rule 7.1(F), and the memorandum contains only 5,295 total words.

Respectfully submitted this 1st day of September, 2023.

 /s/ Jeffery R. Lawley
Jeffery R. Lawley, Esq.
Florida Bar No.: 0596027
Email: jrl@bclmr.com
BILLING, COCHRAN, LYLES,
  MAURO & RAMSEY, P.A.
Las Olas Square, Ste. 600
515 East Las Olas Boulevard
Fort Lauderdale, FL 33301
Tel: 954-764-7150
Fax: 954-764-7279
**Attorneys for Defendant, Wellpath, LLC**

I HEREBY CERTIFY that on this 1st day of September, 2023, that this document is being filed electronically and service shall be through the Court's CM/ECF transmission facilities on all person appearing before the court.

By: /s/ Jeffery R. Lawley
Jeffery R. Lawley, Esq.
Fla. Bar No. 0596027
jrl@bclmr.com