UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DANIEL D. FINK, as Personal
Representative of the ESTATE OF
CALEB D. FINK, on behalf of the
Estate and survivors,

     Plaintiff,

v.

WELLPATH, LLC, a foreign limited
liability company, CLOVIS WATSON,
JR., in his official capacity as Sheriff
of Alachua County, Florida, and
WATSON W. LOUIDOR, individually,

     Defendants.

Case No. 1:23-cv-63-AW-ZCB

**JURY TRIAL DEMANDED**

## CONSENTED[1] FIRST AMENDED COMPLAINT FOR DAMAGES

Plaintiff Daniel D. Fink, as Personal Representative of the Estate of

Caleb D. Fink, on behalf of the Estate and the survivors, by and through his

undersigned attorneys, files this amended complaint for damages against

the Wellpath, LLC, Clovis Watson, Jr., in his official capacity as Sheriff of

Alachua County, Florida, and Watson W. Louidor, in his individual capacity.

In support, Plaintiff alleges:

---

[1] This amendment is being filed with the written consent of
Defendants pursuant to Rule 15(a)(2).

## JURISDICTION AND VENUE

1.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2.     Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of civil rights under the Eighth Amendment to the U.S. Constitution.

3.     Plaintiff's Complaint is also predicated upon the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131 and 12133, and § 504 of the Rehabilitation Act.

4.     Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider the state law claims alleged herein.

5.     Venue is proper in this District under 28 U.S.C. § 1391(b), being the District where the claims arose and where Defendants conduct business.

6.     All conditions precedent to this lawsuit have occurred, been performed, or been waived. Specifically, Plaintiff has complied with all applicable presuit notice provisions of section 768.28, Florida Statutes, for its claims under the Florida Wrongful Death Act (FWDA). Defendants failed to fully comply with the presuit requirements of section 768.28(6)(b).

2

## **PARTIES**

7.      Plaintiff Daniel D. Fink is the duly appointed personal representative of the Estate of Caleb D. Fink, having been so appointed by the probate division of the Eighth Judicial Circuit in and for Alachua County, Florida.

8.      At all times relevant, Plaintiff Daniel D. Fink is and was a resident of Alachua County, Florida.

9.      Plaintiff—as personal representative of the Estate of Caleb D. Fink—is entitled and empowered under the FWDA and otherwise to recover for Caleb D. Fink's survivors, beneficiaries, and estate, all damages allowed pursuant to the FWDA's provisions and otherwise at law for the federal claims.

10.     Plaintiff brings this action on behalf of the Estate and individually on behalf of himself and Peggy Fink, as Caleb D. Fink's survivors. At all times relevant, Plaintiff is a "survivor" as defined in section 768.18, Florida Statutes. At all times relevant, Peggy Fink is a "survivor" as defined in section 768.18, Florida Statutes.

11.     At all times relevant, Caleb D. Fink was a prisoner confined in the Alachua County Jail, a jail owned and operated by the Alachua County Sheriff's Office (ACSO) in Alachua County, Florida.

3

12.    At all times relevant, Caleb D. Fink was a prisoner subject to the custody and control of ACSO, including by and through its employees and agents.

13.    At all times relevant, Defendant Sheriff Clovis Watson, Jr. was and is the elected Sheriff of Alachua County, Florida. As the constitutional officer elected in accordance with Chapter 30, Florida Statutes, and Article VIII, section 1, of the Florida Constitution, Defendant Watson, Jr. is tasked with implementing, ratifying, and approving the policies and practices of the ACSO. Defendant Watson, Jr. and/or Major Robert Stafford were at all times material the final policymakers for ACSO with respect to the Alachua County Jaill, and at all times material were acting under color of law.

14.    Defendant Sheriff Clovis Watson, Jr. is sued in his official capacity and is subject to suit for negligence and wrongful death pursuant to section 768.28, Florida Statutes, as well as Plaintiff's constitutional claims.

15.    Defendant Wellpath, LLC is a Delaware limited liability company, with a principal address of 3340 Perimeter Hill Road, Nashville, Tennessee 37211, registered to do business in the State of Florida. Wellpath has contracted with ACSO to provide medical and mental health care to prisoners and detainees. When providing medical and mental health care for prisoners and detainees in ACSO custody, Wellpath stands in the shoes of ACSO. At

4

all relevant times during the events at issue in this case, Wellpath was acting under color of law by and through its agents, employees, and contractors identified herein and, on information and belief, other presently unknown individuals. Its utilization management staff members are the final policymakers for purposes of the unconstitutional policies, practices, and customs alleged in this Complaint.

16.    At all relevant times, the actions of Watson and Wellpath, and their respective agents, were state action and were taken under color of state law.

17.    At all times relevant, Watson W. Louidor was employed by Wellpath to provide mental health services at the Alachua County Jail and is otherwise *sui juris*. Louidor is being sued in his individual capacity. At all relevant times during the events at issue in this case, Louidor was acting under color of law.

18.    All conditions precedent to the filing of this action have occurred, accrued, or have been waived.

19.    Specifically, Plaintiff has timely complied with all applicable presuit notice provisions of section 768.28, Florida Statutes. Defendants have failed to fully comply with the presuit requirements of section 768.28(6), Florida Statutes.

20.    Plaintiff has been required to engage the services of the undersigned counsel and is entitled to an award of reasonable attorney's fees and costs.

## **FACTUAL ALLEGATIONS**

21.    Caleb D. Fink was arrested and charged with driving under the influence in September 2020.

22.    He was incarcerated at the Alachua County Jail, where he was detained on multiple occasions.

23.    While in the custody of ACSO, ACSO established that Mr. Fink suffered from explosive disorder, bipolar disorder, depression, and Asperger's Syndrome, and ACSO was aware of Mr. Fink's suicidal tendencies and mental health issues.

24.    Mr. Fink was rebooked at the Alachua County Jail on August 9, 2022 for violating the terms of his probation. He was sentenced to serve 110 days at jail, but was given credit for 50 days' time served, with an estimated release date of October 7, 2022.

25.    Upon arriving at the jail, Mr. Fink reiterated his known mental health conditions to Wellpath staff during his classification interview.

26.    Although he denied suicidal ideations at the time, ACSO staff placed Mr. Fink in administrative confinement requiring his condition and

status to be checked every 15 minutes. The classification unit noted that he was to be monitored for "bizarre statements, gestures, and behaviors" and that he would be restricted from possessing sharp instruments and razors.

27.    Mr. Fink was then placed in the 2H pod, which is the mental health pod for prisoners and detainees who are at risk of serious self-harm or suicide. While in 2H, Mr. Fink was supposed to be observed every 15 minutes.

28.    The next day, on August 11, 2022, Defendant Watson Louidor, a contractor or employee for Wellpath under its contract with ACSO to manage the delivery of healthcare at the jail, noted the "Mental Health Suicide Watch Custody Notification" form that Mr. Fink should be transferred from the 2H pod to "GP" or general population. He also noted that Mr. Fink did not have a mental health review (written as "no MHR").

29.    Mr. Fink was not transferred to general population, but to another pod.

30.    While in that pod, he displayed erratic behavior and was disciplined in September 2022 for failing to stay in his assigned bunk.

31.    At that time, ACSO correctional staff contacted nursing staff as to whether Mr. Fink could be transferred to the 4-B pod. The nurse could not

clear Mr. Fink for 4-B for housing "citing his mental health history." Mr. Fink was cleared for alternative housing pending a mental health review.

32.    Although Mr. Fink was held in 2H for a mental health review almost a month earlier, he was still not provided with a review of his mental health needs or treatment. Instead, Wellpath staff sought to transition Mr. Fink to general population without an appropriate review to reduce the additional needs and costs associated with keeping Mr. Fink in a pod or unit with increased observation needs and follow-up.

33.    Notwithstanding Mr. Fink's "mental health history" and the lack of review of his current needs despite obvious and apparent signs of his need for treatment and care to prevent the serious and apparent risk of self-harm, two days after not being cleared to go to 4-B because of his mental health condition and lack of review, Defendant Louidor again recommended that Mr. Fink be transferred to general population, this time from 4-E pod, and again without review. He wrote and initialed on September 6, 2022:



34.    Defendant Louidor knew Mr. Fink's mental health history and was aware of his need for mental health assessment and treatment; however, with reckless disregard for Mr. Fink's health and safety, he

8

authorized his transfer to general population without providing review to ensure that Mr. Fink was provided medication and/or treatment for his bipolar disorder, explosive disorder, and depression.

35.   The deliberate and purposeful failure to have Mr. Fink's mental health review documented or have him treated is part and parcel of Wellpath's unwritten practice and custom of denying mental health care for prisoners and detainees, including at the Alachua County Jail. This practice is pervasive at the jail, which permits Wellpath to manage the delivery of health services. Upon information and belief, other prisoners and detainees at the jail were not provided appropriate mental health review and treatment despite their mental health histories and signs and symptoms of decompensation or mental health illness.

36.   Wellpath made the conscious choice to implement a policy of delayed mental health review or denied mental health review, aware that it was violating prisoners' and detainees' constitutional rights. By not having those prisoners and detainees reviewed, or by delaying review, Wellpath could continue to treat the prisoners and detainees perfunctorily without having to expend resources and costs on more acute treatment. Wellpath also implemented a practice, custom, and police of denying treatment for detainees and prisoners with short stays at the jail, like Mr. Fink, who was

scheduled to be released the month after he committed suicide. Rather than expend resources on treating Mr. Fink, Wellpath, through its staff and agents, deliberately delayed and ultimately denied providing Mr. Fink with mental health treatment because it knew that he would soon be released from the jail, mitigating its need to expend resources on medication and treatment for him.

37.    At one Wellpath facility in California, for example, the U.S. Justice Department concluded that Wellpath had committed constitutional violations because incarcerated persons were "routinely" examined beyond 14 days of admission—"or not at all"—in violation of facility policy. *See* U.S. Dep't of Justice, *Investigation of the San Luis Obispo Jail* (Aug. 31, 2021), *available at* https://www.justice.gov/usao-cdca/pr/us-justice-department-finds-conditions-san-luis-obispo-county-jail-violate-constitution. Additionally, the report stated that "[p]ost-intake mental health assessments are also inadequate, and sometimes occur after significant delay." *Id.*

38.    Wellpath and ACSO were aware of Mr. Fink's worsening condition from his complaints. Despite that, Wellpath and ACSO failed to have Mr. Fink adequately treated and ACSO denied reasonable accommodations to Mr. Fink to ensure that his mental health disorders were appropriately accommodated, such as by ensuring that he was receiving

treatment and observation and receiving services for his mental health disorders.

39.    After Defendant Louidor's second and ultimately successful effort to transfer Mr. Fink away from the appropriate pods where he could be monitored and observed directly and consistently and receive assessment and review, Mr. Fink was left without any accommodations for his mental health disorders, treatment for them, or protection against his serious risk of self-harm. Despite Mr. Fink's serious and obvious mental health condition and risk of serious self-harm, he was not given a mental health review and left without appropriate supervision.

40.    Approximately two weeks later, Mr. Fink committed suicide in the Alachua County Jail. Days prior to his death, Mr. Fink asked ACSO staff for help. Instead, he was punished and left in a locked cell without supervision.

41.    On the day Mr. Fink committed suicide, despite knowing of these risks and failure to provide treatment or assessment to him, Mr. Fink was left unattended for hours in violation of ACSO policy, ensuring that officers and staff could not timely respond.

42.    Mr. Fink is one of a growing number of inmates who have committed suicide at the Alachua County Jail by hanging. In 2017 an inmate hanged himself in his cell. In 2020, several other inmates were found

unresponsive in their cells, like Mr. Fink, after successfully hanging themselves. Despite the history of suicides, ACSO and Wellpath have continued to violate their policies, understaff the jail, and deny access to services and treatment for mentally ill persons, like Mr. Fink.

## Count I – Wrongful Death
### (against Watson, Jr.)

Plaintiff repeats and re-alleges paragraphs 1 through 42 above, as if fully set forth herein and further alleges:

43.    Count I is against Watson, Jr., in his official capacity as Sheriff of Alachua County, Florida, for the negligence of ACSO's employees and contractors, including Wellpath and its employees and contractors, and negligent treatment of Caleb D. Fink, which resulted in his wrongful death.

44.    This action is brought pursuant to the Florida Wrongful Death Act, sections 768.16-27, Florida Statutes.

45.    Watson, Jr. authorized his agents and employees to act for ACSO when the negligent acts alleged herein were committed. His agents and employees accepted the undertaking of acting on his behalf when they committed the negligent acts alleged herein. Watson, Jr. had control over his agents and employees. Further, Watson, Jr. had a nondelegable duty to Mr. Fink under *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir.

1985) and its progeny notwithstanding his contractual delegation of health care services to Wellpath and its employees and/or contractors.

46.    The negligent acts of Watson, Jr.'s agents and employees were committed while acting within the scope and course of their employment. Thus, Watson, Jr., as Sheriff of Alachua County, Florida, is liable for the negligent actions of his agents and employees.

47.    Watson, Jr. and his agents and employees owed Caleb D. Fink a nondelegable duty to use reasonable care to ensure his safety.

48.    Watson, Jr. and his agents and employees failed to perform their duty to use reasonable care to ensure Caleb D. Fink's safety, including from self-harm, thereby abandoning their duty to him.

49.    Watson, Jr. and his agents and employees failed to perform their duty to use reasonable care to ensure Caleb D. Fink's safety and well-being by, including, without limitation:

   a. failing to maintain and properly monitor the safety and welfare of Mr. Fink;

   b. failing to properly assess the safety and well-being of Mr. Fink, including his mental health condition and concerns;

   c. failing to prevent Mr. Fink's suicide;

d. failing to properly place preventative measures necessary to prevent the death of Mr. Fink;

e. failing to train ACSO employees regarding their obligation to secure the safety of prisoners; and

f. failing to implement measures to prevent suicides after recent prior instances of hangings at the Alachua County Jail.

50. As a direct and proximate result of Watson, Jr' and his employees' and agents' failure to perform their duty to use reasonable care to ensure Mr. Fink's safety and well-being, Mr. Finks died.

51. It was reasonably foreseeable that harm would befall Caleb D. Fink either directly or indirectly as a result of these actions and omissions by Watson, Jr., his agents, and employees.

## Count II – 42 U.S.C. § 12131, *et seq.* & 29 U.S.C. §§ 791-94
### (against Watson, Jr.)

Plaintiff repeats and re-alleges paragraphs 1 through 42 above, as if fully set forth herein and further alleges:

52. This count is brought under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.* and 42. U.S.C. § 12131-12134, as well as Section 504 of the Rehabilitation Act (RA), 29 U.S.C. §

701, et seq. and 29 U.S.C. §§ 791–94, *et seq*., and their respective implementing regulations.

53.   ACSO, through its Sheriff, Defendant Watson, Jr., is a "public entity" within the meaning of 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

54.   ACSO is a program or activity that receives federal funding and the operations of ACSO comprise a program and services for purposes of ADA and RA. *See* 29 U.S.C. § 794.

55.   Caleb D. Fink suffered from diagnosed mental health disorders, including explosive disorder, bipolar disorder, and depression, which are disorders or conditions that rendered him disabled as defined in 42 U.S.C. § 12101(1) & (2).

56.   ACSO recognized that Mr. Fink had a diagnosed impairment that substantially limited one or more major life activity. 42 U.S.C. § 12102(1)(C) & (3); 28 C.F.R. § 35.108(a)(1)(iii) & (f). ACSO subjected Mr. Fink to prohibited action because of an actual or perceived impairment.

57.   Mr. Fink was at all times material a qualified individual with a disability because he met the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by ACSO, including but not limited to medical services. 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104; 29 U.S.C. § 794(a).

58.    The widespread failure to provide accommodations for individuals like Mr. Fink with mental health disorders was obvious, flagrant, rampant and of a continued duration such that to put Watson, Jr. and/or his predecessor on notice.

59.    At all times material, Watson, Jr. was an official who at a minimum has authority to address the discrimination and to institute corrective measures on ACSO's behalf and had actual knowledge of discrimination in the entity's programs and failed adequately to respond.

60.    Specifically, Watson, Jr. failed to adequately staff the Alachua County Jail to ensure that individuals suffering from known and diagnosed mental health disorders, like Mr. Fink, were provided accommodations to prevent the risk of serious self-harm. Watson, Jr. had actual knowledge of the widespread failure of ACSO to provide accommodations to prisoners and detainees like Mr. Fink. Watson, Jr. and/or his predecessor turned a blind eye to his subordinates who would deny reasonable accommodations to prisoners and detainees, like Mr. Fink, despite a known and obvious need for such accommodations, such as not providing extended mental health supervision, permitting his staff and contractors to allow individuals with serious risk of self-harm and serious mental health disorders to be housed in general population without measures to ensure their safety from other

prisoners and self-harm, keeping prisoners with mental health disorders in confinement or unable to access services instead of accommodating their needs, and punishing prisoners with disciplinary action because of their disability.

61.    Mr. Fink's need for an accommodation was known and obvious and upon information and belief Mr. Fink requested reasonable accommodations from ACSO, including days before his death.

62.    Watson, Jr. acted intentionally and/or with deliberate indifference to Mr. Fink's need for a reasonable accommodation by failing to accommodate his serious mental health disorder, implement accommodations to ensure his safety from others and himself, and failing to training ACSO employees and contractors regarding appropriate management of mentally ill prisoners and detainees.

63.    Watson, Jr. has known about the violations noted herein but has failed to correct them, thereby exhibiting deliberate indifference to the rights of Mr. Fink. Specifically, Watson, Jr. knew of several other inmates who had successfully hanged themselves at the jail in the years leading up to Mr. Fink's death but failed to implement policies or procedures to appropriate correct the violations.

64. As a proximate cause of Watson, Jr.'s failure and intentional refusal to provide Mr. Fink with a reasonable accommodation for his disability, he suffered physical harm and severe pain.

65. Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 12205 and 29 U.S.C. § 794a.

### Count III – 42 U.S.C. § 1983
**(against Watson, Jr.)**

Plaintiff repeats and re-alleges paragraphs 1 through 42 above, as if fully set forth herein and further alleges:

66. As a prisoner at the Alachua County Jail had an Eighth Amendment right to be protected from harm while incarcerated and serving his sentence.

67. Watson, Jr. was deliberately indifferent or purposefully ignoring Mr. Fink's serious medical needs and serious risk of self-harm in violation of the Eighth Amendment right to be free from cruel and unusual punishment.

68. Mr. Fink's injuries were proximately caused by the policies and practices of ACSO through Defendant Watson, Jr.

69.    Prior to and during the events giving rise to Plaintiff's Complaint, ACSO maintained practices and customs pursuant to which prisoners and detainees like Plaintiff with serious mental health needs were routinely denied medical care and access to medical care and they were not provided with monitoring and observation required per ACSO policy due to failure to adequately supervise ACSO personnel and ensure sufficient staffing levels and ACSO's failure to implement procedures and protocols to prevent suicides despite recent prior suicides at the jail.

70.    Watson, Jr. has admitted that the jail is understaffed. Maj. Stafford, then the jail administrator, was quoted stating that he was "concerned for the inmates in the jail" based on the staffing failures.

71.    There exist policies and widespread practices at the Alachua County Jail pursuant to which prisoners   and detainees receive unconstitutionally inadequate care, including policies and practices in ACSO staff: (a) commonly disregard reports of objectively serious symptoms; (b) refuse to provide adequate mental health treatment to patients; (c) fail to monitor and protect at-risk prisoners and detainees from serious risk of self-harm; and (d) fail to provide intervention, observation, and implement policies to aid prisoners and detainees who are showing obvious indicia and signs of significant risk of self-harm, including through direct requests for

intervention.

72.    These policies, customs and practices were allowed to flourish because Watson, Jr. directly encouraged the very type of misconduct at issue here and failed to provide adequate training, supervision, and staffing of correctional employees at the jail.

73.    Watson, Jr. violated Mr. Fink's rights by maintaining policies, practices and customs that were the moving force of these constitutional violations.

74.    These policies, practices, and customs were able to exist and thrive within ACSO because Watson, Jr. and/or his predecessor was deliberately indifferent to the problem, thereby effectively ratifying it. Specifically, Watson, Jr. and/or his predecessor was on notice of the need for increased staffing, mental health review and treatment, and policy changes to prevent hangings and suicide, but failed act.

75.    Watson, Jr. also acted to violate Mr. Fink's constitutional rights through the actions and failures to act by individuals with final policymaking authority for it.

76.    Specifically, Mr. Fink was considered a high-risk inmate with a known and diagnosed mental health condition. Despite requiring observation and treatment, Mr. Fink was improperly housed at the jail and not provided

the appropriate mental health review and treatment. Mr. Fink alerted ACSO staff to his mental health condition and his serious risk of self-harm, but his pleas were ignored and he was not provided monitoring by ACSO staff to ensure his safety and well-being despite ACSO and its staff knowing that Mr. Fink was at serious risk of harm or self-harm.

77.    Mr. Fink's injuries were caused by persons who acted pursuant to the foregoing policies and practices in engaging in the misconduct described herein.

78.    Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

**Count IV – 42 U.S.C. § 1983**
**(against Louidor)**

Plaintiff repeats and re-alleges paragraphs 1 through 42 above, as if fully set forth herein and further alleges:

79.    As a prisoner at the Alachua County Jail had an Eighth Amendment right to be protected from harm while incarcerated and serving his sentence.

80.    Louidor knew that there was a substantial risk of self-harm to Caleb D. Fink because he had knowledge of Mr. Fink's mental health history,

including reports involving depression and mental health issues predating his most recent incarceration at the Alachua County Jail.

81.   Louidor was deliberately indifferent to that risk when he removed Mr. Fink from administrative confinement subject to mental health review and placed him in general population without appropriate review.

82.   His deliberate indifference created conditions that were extreme and posed an unreasonable risk to Mr. Fink's health and safety.

83.   Louidor was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed.

84.   His knowledge was more than a generalized awareness of a risk to Mr. Finik. He had had sufficient knowledge to present a strong likelihood of injury to Mr. Fink.

85.   As a direct and proximate result of Louidor's s failure to protect Mr. Fink from a serious and substantial risk of harm, Mr. Fink suffered various emotional and physical injuries, distress and pain.

86.   Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

## <u>Count V – 42 U.S.C. § 1983</u>
**(against Wellpath)**

Plaintiff repeats and re-alleges paragraphs 1 through 42 above, as if fully set forth herein and further alleges:

87.    As a prisoner incarcerated at the Alachua County Jail, Mr. Fink had an Eighth Amendment right to receive timely and adequate medical treatment for a serious mental health condition.

88.    Wellpath was deliberately indifferent or purposefully ignoring Mr. Fink's serious medical needs in violation of the Eighth Amendment right to be free from cruel and unusual punishment.

89.    Mr. Fink's injuries were proximately caused by the policies and practices of Wellpath.

90.    Prior to and during the events giving rise to Plaintiff's Complaint, Wellpath maintained practices and customs pursuant to which prisoners and detainees like Plaintiff with serious mental health needs were routinely denied medical care and access to medical care.

91.    Specifically, there exist policies and widespread practices at the Alachua County Jail—through Wellpath's management of healthcare delivery—pursuant to which prisoners and detainees receive unconstitutionally inadequate healthcare, including policies and practices in

which healthcare staff contracted by Wellpath: (a) commonly disregard reports of objectively serious symptoms; (b) refuse to provide adequate mental health treatment to patients; (c) refuse to timely conduct mental health reviews or assessments; (d) release prisoners and detainees into general population, or remove observation requirements, despite obvious and apparent need for mental health observation and treatment; and (e) routinely engage in understaffing.

92.    These policies, customs and practices were allowed to flourish because Wellpath, which directs the provision of healthcare services at the Alachua County Jail, directly encouraged the very type of misconduct at issue here and failed to provide adequate training and supervision of healthcare and correctional employees.

93.    Wellpath violated Mr. Fink's rights by maintaining policies, practices and customs that were the moving force of these constitutional violations.

94.    These policies, practices, and customs were able to exist and thrive within ACSO because Wellpath (as the contractor to oversee health services at ACSO) was deliberately indifferent to the problem, thereby effectively ratifying it.

95.     Wellpath also acted to violate Mr. Fink's constitutional rights through the actions and failures to act by individuals with final policymaking authority for it.

96.     Specifically, Mr. Fink was considered a high-risk inmate with a known and diagnosed mental health condition. Although Wellpath maintains a written policy of requiring mental health review of individuals like Mr. Fink, he was released with an appropriate medical review to general population where he would no longer be subjected to increased observation. Mr. Fink was released to general population despite his known and obvious need for continued monitoring.

97.     Mr. Fink's injuries were caused by persons who acted pursuant to the foregoing policies and practices in engaging in the misconduct described herein.

98.     Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

## **PRAYER FOR RELIEF**

As a result of the tragic and untimely death of Caleb D. Fink, Plaintiff Daniel D. Fink and Peggy Fink, as survivors, and the Estate of Caleb D. Fink, have sustained the following damages for which Defendants are liable:

(a) The Estate of Caleb D. Fink has sustained as damages: medical, funeral and burial expenses incurred as a result of the death of decedent that have become a charge against his Estate or that were paid on his behalf, and loss of net accumulations to the Estate.

(b) Plaintiff Daniel D. Fink and Peggy Fink, as Mr. Fink's survivors, have sustained the following damages:

      i. Loss of past and future support and services, with interest;

      ii. Value of the decedent's past and future support and services to Plaintiff and Ms. Fink, as survivors;

      iii. Loss of companionship, instruction, and guidance; and

      iv. Mental pain and suffering from the date of injury and continuing for the remainder of their respective lives.

Accordingly, Plaintiff Daniel D. Fink respectfully requests that the Court award: the aforesaid damages on Counts I through V, as well as any and all other compensatory, exemplary, and punitive damages suffered by the Estate and survivors; reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, 42 U.S.C. §§ 12205 and 29 U.S.C. § 794a; and such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Daniel D. Fink hereby demands a jury trial of all issues capable of being determined by a jury.

Dated: September 11, 2023.

Respectfully submitted,

*/s/ Orlando Sheppard*
Orlando Sheppard (FBN 118424)
Burns Sheppard Favors: Purely Legal
121 S. Orange Avenue, Suite 1500
Orlando, Florida 32801
orlando@bsflegal.com
Tel. (833) 778-7359

-and-

*/s/ James M. Slater*
James M. Slater (FBN 111779)
Slater Legal PLLC
113 S. Monroe Street
Tallahassee, Florida 32301
james@slater.legal
Tel. (305) 523-9023

*Attorneys for Plaintiff*