UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

Case No.: 1:23-cv-00063-AW-ZCB

DANIEL D. FINK, individually and as
Personal Representative of the Estate of
CALEB D. FINK, deceased, for the
benefit of his survivors and the Estate,

    Plaintiff,

vs.

WELLPATH, LLC a foreign limited liability company;
CLOVIS WATSON JR., in his official capacity as
Sheriff of Alachua County, Florida; and
WATSON W. LOUIDOR, individually,

    Defendants.
_____/

**DEFENDANT WELLPATH, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendant, WELLPATH, LLC ("Wellpath"), by and through its undersigned counsel and pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, and Northern District of Florida Local Rule 7.1, hereby moves to dismiss Plaintiff's Consented First Amended Complaint for Damages (DE 34) ("Amended Complaint") and states as follows in support thereof:

1.     This action arises out of Caleb D. Fink committing suicide in his cell while he was confined as a prisoner at the Alachua County Jail. (DE 34, ¶¶ 11, 40).

1

2. Plaintiff alleges Wellpath contracted with the Alachua County Sheriff's Office (ACSO) to provide medical and mental health care to prisoners and detainees. (*Id.*, ¶ 15).

3. In the Amended Complaint, Plaintiff asserts only one claim against Wellpath: deliberate indifference to Caleb Fink's serious medical needs in violation of the Eighth Amendment, pursuant to 42 U.S.C. § 1983 (Count V). Plaintiff alleges in that claim that Caleb Fink's injuries were caused by Wellpath's alleged policies, practices and customs. (DE 34, ¶¶ 89-94, 97). Plaintiff further alleges in Count V that Wellpath "also acted to violate Mr. Fink's constitutional rights through the actions and failures to act by individuals with final policymaking authority for it." (*Id.*, ¶ 95).

4. As discussed in more detail in the below Memorandum of Law, which is incorporated herein by reference, Plaintiff's Amended Complaint against Wellpath should be dismissed because the § 1983 claim asserted in Count V fails to state a claim against Wellpath upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

## MEMORANDUM OF LAW

**I.      Standards for Pleading and Dismissal**

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . …" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). When determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

However, the Court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). A plaintiff's complaint must be

dismissed if the facts alleged "have not nudged [its] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## II. Count V Fails to State a § 1983 Claim Against Wellpath.

For purposes of § 1983 claims, the Eleventh Circuit has held that the *Monell*[1] rationale applies to private entities acting in the place of a municipality. *See Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). The Eleventh Circuit has further determined that when a private entity contracts with a government to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state. *See id.* "In so doing, it becomes the functional equivalent of the municipality." *Id.* Here, Plaintiff has alleged that Caleb Fink was a prisoner confined in the Alachua County Jail and that Wellpath was contracted to provide medical and mental health care to prisoners and detainees within that correctional facility. (DE 34, ¶¶ 11, 15). Accordingly, the *Monell* principles and requirements apply to Plaintiff's § 1983 claim against Wellpath, based on Plaintiff's allegations directed against Wellpath.

A municipality (or other entity performing a municipal function) may be held liable under § 1983 only when the constitutional deprivation was undertaken pursuant to a policy or custom; respondeat superior is not an appropriate basis for suit. *Pembaur v. Cincinnati*, 475 U.S. 469, 478-81 (1986); *Monell v. N.Y.C. Dep't*

---

[1] *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658 (1978).

*of Soc. Servs.*, 436 U.S. 658, 690, 694 (1978). "[R]ecovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur*, 475 U.S. at 480. Thus, a plaintiff wishing to recover under § 1983 must properly allege: (1) a policy or custom; or (2) a failure to train or supervise, arguably a kind of policy or custom claim.

Alternatively, "municipal liability may [also] attach to a single decision made by a municipal official if that municipal official is the final policymaker for the municipality with respect to the subject matter in question." *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir. 1989). In such an instance, "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483.

    A.    <u>**Policy, Custom, or Practice**</u>

A municipal act rising to the level of a policy or custom can be established in one of three ways: (1) an express policy, (2) a widespread practice that is so well-settled and permanent as to constitute a custom, or (3) the act or decision of an official with final policymaking authority. *Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 966-68 (11th Cir. 2002). A policy or custom has been further defined

as a "deeply imbedded traditional way[ ] of carrying out policy," *Fundiller v. Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985), or the tacit authorization or display of deliberate indifference towards misconduct, *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (citation omitted). The "official policy or custom must be the moving force of the constitutional violation in order to establish liability of a government body under [Section] 1983." *Gilmere v. City of Atlanta*, 737 F.2d 894, 901 (11th Cir. 1984).

Plaintiff does not allege *facts* establishing that Wellpath had any policy, custom, or widespread practice that was responsible for Caleb Fink's death. Plaintiff's allegations regarding policies, practices, and customs mostly consist of conclusory assertions. For example, Plaintiff alleges that Wellpath has an

> unwritten practice and custom of denying mental health care for prisoners and detainees, including at the Alachua County Jail. This practice is pervasive at the jail, which permits Wellpath to manage the delivery of health services. Upon information and belief, other prisoners and detainees at the jail were not provided appropriate mental health review and treatment despite their mental health histories and signs and symptoms of decompensation or mental illness.

(DE 34, ¶ 35). Plaintiff further alleges that

> Wellpath made the conscious choice to implement a policy of delayed mental health review or denied mental health review, aware that it was violating prisoners' and detainees' constitutional rights. By not having those prisoners and detainees reviewed, or by delaying review, Wellpath could continue to treat the prisoners and detainees perfunctorily without having to expend resources and costs on more acute treatment. Wellpath also implemented a practice, custom, and police [sic] of denying treatment for detainees and prisoners with short stays at the jail, like Mr. Fink … .

6

(*Id.*, ¶ 36).

As putative factual support for the existence of any such alleged policy, practice, or custom, Plaintiff alleges that at one "Wellpath facility in California," the U.S. Justice Department "concluded that Wellpath had committed constitutional violations because incarcerated persons were 'routinely' examined beyond 14 days of admission—'or not at all'—in violation of facility policy" and that the same report stated that " '[p]ost-intake mental health assessments are also inadequate, and sometimes occur after significant delay.'" (*Id.*, ¶ 37). Such conclusory allegations are not relevant as to whether Wellpath had a policy, practice, or custom that caused Mr. Louidor or any other alleged employee or staff member of Wellpath at the Alachua County Jail to violate Mr. Fink's constitutional rights.

> Plaintiff further alleges that
>
> Mr. Fink is one of a growing number of inmates who have committed suicide at the Alachua County Jail by hanging. In 2017 an inmate hanged himself in his cell. In 2020, several other inmates were found unresponsive in their cells, like Mr. Fink, after successfully hanging themselves. Despite the history of suicides, ACSO and *Wellpath have continued to violate their policies*, understaff the jail, and deny access to services and treatment for mentally ill persons, like Mr. Fink.

(*Id.*, ¶ 42) (emphasis added). This allegation likewise fails to establish any policy, practice, or custom on the part of Wellpath. While Plaintiff alleges that an inmate at the Alachua County Jail hanged himself in 2017 and "several other inmates" there "were found unresponsive in their cells" in 2020, there are no details regarding those

7

incidents and no allegations connecting those incidents to any conduct on the part of Wellpath.

The allegations within Count V regarding an alleged policy, practice, or custom are also conclusory and fail to substantiate the existence of any policy, custom, or practice of Wellpath that caused the alleged constitutional violation. (*See* DE 34, ¶¶ 89-94, 97). Furthermore, Count V appears to be an attempt to impose § 1983 liability upon Wellpath based on the alleged acts or omissions of its alleged employees and/or contractors/agents, including Defendant Watson W. Louidor, under a *respondeat superior* theory. The same alleged acts and omissions Plaintiff attributes to Defendant Louidor or other unidentified Wellpath "staff" are alleged against Wellpath. (*See id.*, ¶¶ 25, 28, 31-34, 39, 80-81, 96). However, Plaintiff appears to suggest that such alleged acts and omissions of Defendant Louidor or other Wellpath "staff" actually violated Wellpath's policy. (*See id.*, ¶¶ 42, 96).

In sum, Plaintiff's allegations, both within the body of Count V and in the preliminary allegations, do not establish a policy, practice, or custom of Wellpath evidencing deliberate indifference by Wellpath. Plaintiff's conclusory allegations with respect to Wellpath's putative liability under § 1983 are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *See Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1272 (S.D. Fla. 2015) (stating that "naked, conclusory assertion" of a policy or custom "is supported by no more than the allegations of the four

instances of improper DAVID access by City employees" and that "[t]his is not enough to satisfy the pleading standard on a Rule 12(b)(6) motion to dismiss, as Watts is required to allege specific facts detailing a widespread policy or custom, not just a couple of incidents and a conclusory assertion."). As the *Watts* Court noted, "[i]t is well known municipal liability under section 1983 is hard to establish. The test is purposefully difficult, lest a loosening of the standard effectively created a *respondeat superior* regime of liability—something *Monell* and its progeny expressly sought to avoid." *Id.* at 1273. In sum, Plaintiff fails to raise his § 1983 claim against Wellpath in Count V above the speculative level, *see Hargis v. City of Orlando*, No. 6:12-CV-723-Orl-37KRS, 2012 WL 6089715, at *5 (M.D. Fla. Dec. 7, 2012), and that claim should be dismissed.

### B. Failure to Train and Supervise

Although Plaintiff does not allege a failure to train and supervise in a discrete claim or count, Plaintiff's Amended Complaint includes a passing, cursory reference to allegedly inadequate training and supervision. Section 1983 liability for failure to train or supervise will only be imposed on a municipality where the municipality "inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)). Failure to train or

supervise is only a policy when deliberate indifference is evidenced. *City of Canton*, 489 U.S. at 388. To establish deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). As such, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (internal citations omitted).

Here, the Amended Complaint includes only a single, conclusory allegation referencing an alleged failure to train:

> These policies, customs and practices were allowed to flourish because Wellpath, which directs the provision of healthcare services at the Alachua County Jail, directly encouraged the very type of misconduct at issue here and *failed to provide adequate training and supervision of healthcare and correctional employees*.

(DE 34, ¶ 92) (emphasis added). Thus,

> Plaintiff does not allege what kind of training or supervision was in place, what events or incidents occurred that would put Defendants on notice of the need for more or different training or supervision to meet the deliberate indifference requirement, or how the training and supervision at the time caused the alleged deprivation of his rights. While detailed factual allegations are not required, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), something more than legal conclusions, which are not entitled to the presumption of truth, must be alleged to withstand a motion to dismiss.

10

supervise is only a policy when deliberate indifference is evidenced. *City of Canton*, 489 U.S. at 388. To establish deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). As such, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (internal citations omitted).

Here, the Amended Complaint includes only a single, conclusory allegation referencing an alleged failure to train:

> These policies, customs and practices were allowed to flourish because Wellpath, which directs the provision of healthcare services at the Alachua County Jail, directly encouraged the very type of misconduct at issue here and *failed to provide adequate training and supervision of healthcare and correctional employees*.

(DE 34, ¶ 92) (emphasis added). Thus,

> Plaintiff does not allege what kind of training or supervision was in place, what events or incidents occurred that would put Defendants on notice of the need for more or different training or supervision to meet the deliberate indifference requirement, or how the training and supervision at the time caused the alleged deprivation of his rights. While detailed factual allegations are not required, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), something more than legal conclusions, which are not entitled to the presumption of truth, must be alleged to withstand a motion to dismiss.

*Hargis*, 2012 WL 6089715, at *6. Accordingly, Plaintiff fails to state a claim for relief on a failure to train or supervise theory, and the § 1983 claim against Wellpath in Count V of the Amended Complaint should be dismissed to the extent it is based on such a theory.

C. **Final Policymaker**

Plaintiff's Amended Complaint similarly contains cursory and conclusory allegations pertaining to a final policymaker theory of liability against Wellpath. For example, in the preliminary allegations, Plaintiff alleges that Wellpath was acting under color of law "by and through its agents, employees, and contractors identified herein and, on information and belief, other presently unknown individuals. *Its utilization management staff members are the final policymakers for purposes of the unconstitutional policies, practices, and customs alleged in this Complaint*." (DE 34, ¶ 15) (emphasis added). Within Count V itself, Plaintiff alleges that "Wellpath also acted to violate Mr. Fink's constitutional rights through the actions and failures to act by individuals with final policymaking authority for it." (*Id.*, ¶ 95). Plaintiff then alleges in the next paragraph:

> Specifically, Mr. Fink was considered a high-risk inmate with a known and diagnosed mental health condition. Although Wellpath maintains a written policy of requiring mental health review of individuals like Mr. Fink, he was released with an appropriate medical review to general population where he would no longer be subjected to increased observation. Mr. Fink was released to general population despite his known and obvious need for continued monitoring.

11

(*Id.*, ¶ 96).

Elsewhere, Plaintiff alleges that unidentified "Wellpath staff" (*id.*, ¶ 32) and Defendant, Watson Louidor, who is alleged to be "a contractor or employee for Wellpath" (*id.*, ¶ 28) sought to release Caleb Fink to general population (*id.*, ¶¶ 28, 33-34, 39, 80-81).  Thus, it is not clear whether Plaintiff is alleging that Defendant Louidor was a final policymaker for Wellpath or that other "Wellpath staff" or "utilization management staff members" were final policymakers.  At any rate, Plaintiff does not allege or identify *who delegated* to Defendant Louidor or, ostensibly, other unidentified Wellpath "staff" the authority to make final decisions, or that the delegation was from a final policymaker or final policymakers of Wellpath.  *Cf. Gross v. Parker*, No. 6:07-cv-1667-Orl-31UAM, 2008 WL 151883, at *2 (M.D. Fla. Jan. 15, 2008) ("[I]n order to establish Armor's liability under § 1983 Gross must allege that … the final policymakers of [Armor] delegated their authority to a subordinate who, in turn, caused a constitutional deprivation … .") (citation omitted) (alteration in original).

Plaintiff's conclusory allegations described above (as well as the other allegations in the rest of Count V) are insufficient to state a § 1983 claim under a delegation/final policymaker theory.  *See Viera v. City of Lake Worth, Fla.*, 853 Fed. Appx. 356, 359-60 (11th Cir. 2021) (affirming dismissal where plaintiffs "fail[ed] to allege sufficient facts" establishing that two named city attorneys, who allegedly

filed unredacted documents with the plaintiff's private personal information on the court's website that were available to the general public, "were the City's final policymakers in this instance"); *Rosario v. Miami-Dade Cnty.*, 490 F. Supp. 2d 1213, 1223 (S.D. Fla. 2007) (concluding that plaintiff's "conclusory allegations" that unidentified county and/or public health trust representative who determined that plaintiff should be transferred back to his cell instead of to a hospital "had final policymaking authority regarding [plaintiff's] needs" were "not sufficient to state a claim for which relief may be granted under § 1983" against either the county or the public health trust). Plaintiff has not alleged any facts establishing that Wellpath's final policymaking authority was delegated to Defendant Louidor, or other unnamed "staff." The Court is not required to accept Plaintiff's conclusory assertions pertaining to a putative final policymaker theory. Another federal court has dismissed a § 1983 claim based on alleged delegated policymaking authority with even more detailed allegations than those in Plaintiff's Amended Complaint in this case, stating:

> [I]t is plain that Plaintiffs Second Amended Complaint contains none of the predicate facts necessary to support the claims against Defendant Gee under § 1983. Plaintiff contends that Spinelli made the "decision [to deny the contraception] as the person designated by Gee, in his official capacity as Sheriff of Hillsborough County, with 'final policymaking authority' over whether to provide preciously prescribed contraceptive medication to inmates at the Orient Road jail." … This Court must, however, disregard such unadorned legal conclusions, leaving Plaintiff with nothing at all upon which to base § 1983 liability against Gee. … Plaintiff's Complaint, for example, never explains

13

> Spinelli's position at the Jail, whether she was subject to supervision, or how, as a matter of *fact,* she is alleged to have in any way been "the sole and final policymaker with respect to medical affairs" at the Jail. *Mandel,* 888 F.2d at 794. … This Court has no choice but to grant Defendants' Motion to Dismiss in part and dismiss Counts III and IV against Defendant Gee.

*R.W. v. Spinelli*, No. 8:11-CV-1326-EAK-AEP, 2012 WL 727805, at *4 (M.D. Fla. Mar. 6, 2012).

The mere delegation of authority to a subordinate to exercise discretion is not enough to give the subordinate policy making authority, and the subordinate cannot be considered to have policymaking authority unless the subordinate's discretionary decisions are not constrained by official policies and not subject to review.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125-28 (1988); *see also Scala v. City of Winter Park*, 116 F.3d 1396, 1401 (11th Cir. 1997) (explaining that "a municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review.").  Here, Plaintiff has not alleged sufficient facts to make it plausible that either Defendant Louidor, alleged to be a contractor or employee of Wellpath, or the unidentified staff members had final policymaking authority for Wellpath.  A doctor or other healthcare provider at a correctional facility does not become a final policymaker for § 1983 purposes merely by treating or providing care to a particular inmate, which is the essence of Plaintiff's allegations.  Plaintiff's attempt to impose liability *on Wellpath* on the final policymaker/delegation theory based on his scant allegations

in this regard would effectively collapse § 1983 liability under a final policymaker theory into mere respondeat superior liability, which is prohibited with respect to § 1983 claims. "It is well known municipal liability under section 1983 is hard to establish. The test is purposefully difficult, lest a loosening of the standard effectively created a *respondeat superior* regime of liability—something *Monell* and its progeny expressly sought to avoid." *Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1273 (S.D. Fla. 2015).

Accordingly, Plaintiff fails to state a claim for relief on a final policymaker theory, and the § 1983 claim against Wellpath in Count V of the Amended Complaint should be dismissed to the extent it is based on such a theory.

### D.  **Deliberate Indifference**

In Count V, Plaintiff alleges that "Wellpath was deliberately indifferent or purposefully ignoring Mr. Fink's serious medical needs." (DE 34, ¶ 88). To state a claim for deliberate indifference against Wellpath in the absence of a policy, custom, or practice, or a failure to train or supervise (which theories are already discussed above), Plaintiff must allege facts establishing that Caleb Fink had a serious medical or mental health need, that a final policymaker for Wellpath was deliberately indifferent to that need, and that Caleb Fink's injury was caused by such deliberate indifference. *See Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010) (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)). To prove that

15

Wellpath was deliberately indifferent to Caleb Fink's serious medical need, Plaintiff must prove "'(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence.'" *See id.* (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (alteration in original) (internal quotation marks omitted)). "[A] claim of deliberate indifference requires proof of more than gross negligence." *Id.* (citation omitted). Indeed, to rise to the level of deliberate indifference, the medical treatment (or alleged lack thereof) in question must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).

For the subjective knowledge component, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "No liability arises for 'an official's failure to alleviate a significant risk that he should have perceived but did not.'" *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (quoting *Farmer*, 511 U.S. at 838). Importantly, "*imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference*," thus, "*[e]ach individual Defendant must be judged separately and on the basis of what that person knows*." *Burnette*, 533 F.3d at 1331 (citation and footnote omitted) (emphasis added). Here, it is impossible for Plaintiff to maintain

16

such a claim because Plaintiff's manner of pleading does not distinguish what Wellpath or its putative final policymaker(s) knew and did or failed to do from any of the other Defendants, including Defendant Louidor. (*See* DE 34, ¶¶ 23, 25-34, 36-42, 80-81, 94, 96).

In order to state a claim for deliberate indifference, Plaintiff must allege facts demonstrating that Wellpath's final policymaker had knowledge of Caleb Fink's need for medical care and *intentionally refused* to provide that care. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985). Under the deliberate indifference standard, "an inadvertent failure to provide adequate medical care" does not properly state a claim under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Coley v. Wexford Health Sources, Inc.*, No. 06-61239-CIV, 2007 WL 4365597, at *10 (S.D. Fla. Dec. 13, 2007). Here, Plaintiff has failed to allege facts indicating that a final policymaker of Wellpath had subjective knowledge of a risk of serious harm to Caleb Fink and disregarded that risk of serious harm by conduct that is more than gross negligence. *See Townsend*, 601 F.3d at 1158. Accordingly, Plaintiff's claim in Count V fails to state a claim against Wellpath for deliberate indifference.

## CONCLUSION

For the foregoing reasons, the claim asserted against Wellpath in Count V of the Amended Complaint should be dismissed.

WHEREFORE, Defendant, Wellpath, respectfully requests that this Honorable Court enter an Order granting this Motion, dismissing Plaintiff's Amended Complaint against Wellpath (DE 34), and providing any further relief the Court deems just and appropriate.

## COMPLIANCE WITH LOCAL RULE 7.1 (D) AND (F)

Pursuant to Local Rule 7.1(D), an attorney conference and certificate are not required for the instant motion as the same would determine the outcome of a case or claim. The foregoing memorandum complies with Local Rule 7.1(F), and the memorandum contains only 4,163 total words.

Respectfully submitted this 25th day of September, 2023.

          /s/ Jeffery R. Lawley
Jeffery R. Lawley, Esq.
Florida Bar No.: 0596027
Email: jrl@bclmr.com
BILLING, COCHRAN, LYLES,
   MAURO & RAMSEY, P.A.
Las Olas Square, Ste. 600
515 East Las Olas Boulevard
Fort Lauderdale, FL  33301
Tel: 954-764-7150
Fax: 954-764-7279
**Attorneys for Defendant, Wellpath, LLC**

I HEREBY CERTIFY that on this 25th day of September, 2023, that this document is being filed electronically and service shall be through the Court's CM/ECF transmission facilities on all person appearing before the court.

By: /s/ *Jeffery R. Lawley*
Jeffery R. Lawley, Esq.
Fla. Bar No. 0596027
jrl@bclmr.com