UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DANIEL D. FINK,

     Plaintiff,

v.

WELLPATH, LLC, *et al.*,

     Defendants.

Case No. 1:23-cv-63-AW-ZCB

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO WELLPATH'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Pursuant to Local Rule 7.1(E), Plaintiff Daniel D. Fink files this memorandum in opposition to Defendant Wellpath, LLC's motion to dismiss Plaintiff's First Amended Complaint. (Doc. 40). As grounds, Plaintiff states:

## INTRODUCTION

This is a lawsuit brought by Caleb Fink's father, as the personal representative of his estate, to seek damages for violating Caleb's rights while serving a two-month period of incarceration at the Alachua County Jail. *See, generally*, First Am. Compl. (FAC) (Doc. 34). Plaintiff seeks to hold Wellpath—the private entity that manages the delivery of healthcare at the jail—liable for its unconstitutional customs, practices, and policies. *See* FAC, Count V. Wellpath moves to dismiss Count V under several theories. For the reasons set forth below, the Court should deny Wellpath's motion.

## RELEVANT FACTUAL BACKGROUND

Caleb was a young man, who was in an out of the Alachua County Jail. FAC ¶ 22. While booked at the jail, the Sheriff's staff established that Caleb suffered from serious mental health disorders, specifically: bipolar disorder, explosive disorder, and depression. *Id.* at ¶ 23.

In August 2022, Caleb was sentenced to a parole violation and ordered to serve around 60 days at the Alachua County Jail. *Id.* at ¶ 24. When he arrived at the jail in August 2022, the Sheriff's staff and Wellpath providers knew about Caleb's mental health diagnoses and history. *Id.* at ¶ 25. Caleb displayed erratic behavior and received discipline while in the jail awaiting mental health review. *Id.* at ¶ 30. Caleb was held in segregation when he first arrived at the jail because of his mental health history, *see id.* at ¶¶ 26–27, but was ultimately removed from those safeguards without having a mental health review. *Id.* at ¶¶ 31–33. Wellpath's provider approved Caleb's placement as part of Wellpath's policy to transition short-term detainees and prisoners out of mental health pods as a cost-saving mechanism. *See id.* at ¶¶ 32, 36, 96.

Without review or safeguards for his mental heallth condition, Caleb was placed in a cell and part of the jail that Wellpath and its staff knew was not appropriate for his needs. *Id.* at ¶ 40. Ultimately, Caleb committed suicide at the jail weeks before his release. *Id.* at ¶¶ 40–41.

## MEMORANDUM OF LAW

To survive a 12(b)(6) motion to dismiss, a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," but she "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Instead, a complaint must contain "enough facts to state a claim to relief that is plausible on its face," *Brooks v. Warden*, 800 F.3d 1295, 1300 (11th Cir. 2015) (quotation omitted), which can allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Waldman v. Comm'r*, 871 F.3d 1283, 1289 (11th Cir. 2017). This threshold "is not akin to a 'probability requirement'"—the plaintiff must merely allege "'enough fact to raise a reasonable expectation that the discovery will reveal evidence' of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).

The Eleventh Circuit thus applies a "two-pronged approach" in evaluating motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). This approach applies to all Rule 8(a) pleadings—no heightened pleading standard exists for civil right or municipal liability claims. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993).

Under *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658 (1978), "[a] municipality can be sued directly under § 1983 when one of its customs, practices, or policies causes a constitutional injury." *Barnett v. MacArthur*, 956 F.3d 1291, 1296 (11th Cir. 2020); *see also Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, Fla., 402 F.3d 1092, 1116 (11th Cir. 2005) (government entity itself must cause the constitutional violation).[1]

To state a *Monell* claim, a plaintiff must allege facts showing: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Marantes v. Miami-Dade Cty.*, 649 F. App'x 665, 672 (11th Cir. 2016) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). *Monell* liability can also be established based on a failure to adequately train employees where such a failure, "evidences a deliberate indifference to the rights of its inhabitants [that] can be properly thought of as a . . . policy or custom" *City of Canton v. Harris*, 489 U.S. 378, 389, (1989). "[A] municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy if the municipality tacitly authorizes these actions or displays deliberate indifference towards the misconduct." *Griffin v. City of OpaLocka*, 261 F.3d 1295, 1308

---

[1] Wellpath takes on the position of a municipality for the purpose of liability here, because "[w]hen a private entity . . . contracts with a [municipality] to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state and 'becomes the functional equivalent of the municipality' under section 1983." *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011); *see also* (Doc. 40 at 4) (*Monell* principles apply to Wellpath).

(11th Cir. 2001).  Further, municipal "liability on the basis of ratification exists when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Matthews v. Columbia Cty.*, 294 F.3d 1294, 1297 (11th Cir. 2002); *see also Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (a policy can be adopted by the entity or created by an official of such rank that "he or she could be said to be acting on behalf of the [entity]").

### 1.  Plaintiff offers factual support for his *Monell* claims.

Wellpath argues that Count V should be dismissed because Plaintiff's has not alleged sufficient facts undergirding the practices, policies, and customs that contributed to or resulted in Caleb's death. (Doc. 40 at 6). It also argues in cursory fashion that Plaintiff has failed to allege facts supporting its deliberate indifference to Caleb's serious risk of self-harm. Neither assertion is correct.

The Eighth Amendment[2] to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "The 'cruel and unusual punishments' standard applies to the conditions of a prisoner's confinement." *Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004). An Eighth Amendment challenge to the conditions of confinement has two components: one objective and the other subjective. *See Farmer*

---

[2] The Eighth Amendment, not the Fourteenth Amendment, applies because Caleb was serving a sentence, not pretrial detention. FAC ¶ 24.

*v. Brennan*, 511 U.S. 825, 846, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

First, to satisfy the "objective component," the prisoner must show "an objectively intolerable risk of harm." *Id.* He must show that the challenged conditions were "extreme" and presented an "'unreasonable risk of serious damage to his future health' or safety." *Chandler*, 379 F.3d at 1289 (quoting *Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). Second, to satisfy the "subjective component," the prisoner must show that the prison official acted with deliberate indifference. *Chandler*, 379 F.3d at 1289. A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). A prison "official may escape liability for known risks 'if [he] responded reasonably to the risk, even if the harm ultimately was not averted.'" *Chandler*, 379 F.3d at 1290 (quoting *Farmer*, 511 U.S. at 844, 114 S.Ct. 1970). Both prongs are met here.

As to the objective component, Caleb suffered from an objective risk of harm—specifically a "serious medical need." *Gilmore v. Hodges*, 738 F.3d 266, 274 (11th Cir. 2013) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."). Caleb was diagnosed with serious psychological disorders, which were documented and known to Wellpath and its providers. FAC ¶¶ 23, 25. Wellpath's final policymakers knew of the serious risk of

self-harm but knowingly disregarded it. *Id.* at ¶¶ 95–96; *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013); *Halte v. Tallapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1995); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995) ("[K]nowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference."); *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) ("A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference."). They did so by moving him to improper housing without safeguards and an appropriate mental health review. *Id.* Plaintiff has sufficiently pleaded facts to support that Wellpath was deliberately indifferent to Caleb's serious medical needs.

As for the facts that underlie Plaintiff's custom, policy, and practice allegations, the Supreme Court and the Eleventh Circuit have made clear that there is no heightened pleading standard under Rule 8(a)(2) for *Monell* claims. *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) ("[A] federal court may not apply a standard 'more stringent than the usual pleading requirements of Rule 8(a)' in 'civil rights cases alleging municipal liability[.]'") (citation omitted); *Hoefling v. City of Miami*, 811 F.3d 1271, 1275–76 (11th Cir. 2016) (finding no heightened pleading standard for a Monell claim); *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) ("After *Ashcroft v. Iqbal*, [] which applied the *Twombly* pleading standard in a civil rights/qualified immunity context, there is no longer a heightened pleading standard in cases governed by Rule 8(a)(2), including civil rights [cases] under § 1983[.]") (quotations omitted)); *Randall v.*

*Scott*, 610 F.3d 701, 710 (11th Cir. 2010) ("After *Iqbal* it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints.").

Plaintiff alleges that under Wellpath's management of healthcare delivery within the Alachua County Jail, the following widespread policies and practices exist by which prisoners and detainees receive unconstitutionally inadequate healthcare: "(a) commonly disregard reports of objectively serious symptoms; (b) refuse to provide adequate mental health treatment to patients; (c) refuse to timely conduct mental health reviews or assessments; (d) release prisoners and detainees into general population, or remove observation requirements, despite obvious and apparent need for mental health observation and treatment; and (e) routinely engage in understaffing." FAC ¶ 91. The FAC further alleges that these policies and practices were allowed to flourish because Wellpath directly encouraged the very type of misconduct here. *Id.* at ¶ 92.[3]

Plaintiff alleges that Wellpath failed to properly treat Caleb and provide him with care and observation. *See, generally*, FAC. It did this to "reduce the additional

---

[3] Wellpath has also argued that Plaintiff has not explained what the training and supervision failures were (Doc. 40 at 9–11), but that is not correct. Plaintiff has alleged that Wellpath provider Watson Louidor repeatedly attempted to send Caleb from supervised pods to general population without appropriate mental health review. *See, e.g.*, FAC ¶¶ 28, 33–34. Those are facts that underlie Wellpath's training and supervision failures. Those claims sufficiently "raise a reasonable expectation that discovery will reveal evidence" of this policy. *Ferrell v. Fla. Dep't of Corr.*, 2022 WL 329985, at *7 (N.D. Fla. Jan. 13, 2022), report and recommendation adopted, 2022 WL 327203 (N.D. Fla. Feb. 3, 2022).

needs and costs associated with keeping [Caleb] in a pod or unit with increased observation needs and follow-up." *Id.* at ¶ 32; *see also id.* at ¶ 36 (Wellpath deliberately delayed and denied treatment to reduce costs given Caleb's short jail stay). Courts have found allegations that the medical provider was withholding treatment for monetary concerns was sufficient to overcome a motion to dismiss. *Hayes v. Corizon Health, Inc.*, 2020 WL 6219833, at *8 (N.D. Fla. Sept. 22, 2020), report and recommendation adopted, 2020 WL 6206012 (N.D. Fla. Oct. 22, 2020) (finding allegation that plaintiff "did not receive necessary treatment sooner due to Centurion's custom and/or policy of cost containment" was sufficient to overcome a motion to dismiss"); *Carmichael v. Jones*, 2017 WL 2637410, at *9 (N.D. Fla. Apr. 12, 2017), report and recommendation adopted, 2017 WL 2636492 (N.D. Fla. June 17, 2017) (rejecting argument that allegation Corizon "promulgated a policy or custom to refuse to disclose the criteria for necessary surgery ... and to deny treatment based on prisoner age, and on the basis of cost-savings" was speculative and conclusory). Plaintiff has therefore adequately alleged Wellpath's unconstitutional policies, practices, and customs.

As a final point, Wellpath also complains that Plaintiff "attributes" the same acts and omissions to Wellpath <u>and</u> its providers, which it suggests reveals that Count V is an impermissible claim for vicarious liability, not a *Monell* claim. (Doc. 40 at 8). Not so. Plaintiff is entitled to plead inconsistent claims under Rule 8(d). For example, Plaintiff may allege both that Defendant Watson Louidor violated Wellpath's policies,

9

as evidence of his own deliberate indifference, *see, e.g.*, *Stewart v. Johnson*, 2021 WL 3081882, at *3 (S.D. Ga. July 21, 2021) ("evidence of a policy violation may be evidence of deliberate indifference"), and acted in conformity with one of Wellpath's unconstitutional policies, therefore implicating Wellpath's liability under *Monell*. The Court should easily dispense with Wellpath's argument on vicarious liability.

### 2. Plaintiff is not required to identify a final policymaker at this stage.

Wellpath next argues that the Court should reject Plaintiff's "final policymaker" allegations. (Doc. 40 at 11–15). An entity "is responsible for any actions taken by the particular official who 'possesses final authority to establish municipal policy with respect to the action ordered[.]'" *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1480 (11th Cir. 1991) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). "Whether a particular official has final policymaking authority is a question of state law" *Id.* (citing *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701 (1989)). Wellpath argues that Plaintiff's final policymaker allegations are conclusory because he references utilization management staff as final policymakers without naming them, but also references other "staff" and Defendant Watson Louidor elsewhere in the complaint, and perhaps those are the final policymakers. (Doc. 40 at 12). It does not matter who had final decisionmaking authority at this stage because "identifying and proving that a final policymaker acted on behalf of a municipality is 'an evidentiary standard, and not a pleading requirement.'" *Hoefling*, 811 F.3d at 1280 (quoting *Swierkiewicz v. Sorema*,

*N.A.*, 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). According to the Eleventh Circuit in *Hoefling*, Plaintiff need only to "allege a policy, practice, or custom of [Wellpath] which caused the [violation of his Caleb's Eighth Amendment rights]." *Id.*; *see also Christmas v. Nabors*, 76 F.4th 1320, 1329–30 (11th Cir. 2023). Because Plaintiff has alleged that utilization managers were the final policymakers for policies he identified in the complaint, he has satisfied his requirement under *Twombly*, and his inability to identify the specific individuals is not grounds for dismissal.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Daniel D. Fink respectfully requests that the Court deny Wellpath, LLC's motion to dismiss his First Amended Complaint.

Dated: October 2, 2023.

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
Slater Legal PLLC
113 S. Monroe Street
Tallahassee, Florida 32301
james@slater.legal
Tel. (305) 523-9023

*/s/ Orlando Sheppard*
Orlando Sheppard (FBN 118424)
Burns Sheppard Favors
121 S. Orange Avenue, Suite 1500
Orlando, Florida 32801
orlando@bsflegal.com
Tel. (833) 778-7359

*Attorneys for Plaintiff*

**Certificate of Compliance with Local Rule 7.1(F)**

Pursuant to Local Rule 7.1(F), I hereby certify that the foregoing document contains 2,668 words, inclusive of headings, footnotes, and quotations, but exclusive of the case style, signature block and certificates.

By: */s/ James Slater*
James Slater