UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DANIEL D. FINK,

    Plaintiff,

v.

WELLPATH, LLC, *et al.*,

    Defendants.

Case No. 1:23-cv-63-AW-ZCB

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
SHERIFF WATSON'S MOTION TO DISMISS
COUNT II OF THE FIRST AMENDED COMPLAINT**

Pursuant to Local Rule 7.1(E), Plaintiff Daniel D. Fink files this memorandum in opposition to Defendant Clovis Watson, Jr.'s motion to dismiss Count II of Plaintiff's First Amended Complaint. (Doc. 42). As grounds, Plaintiff states:

**INTRODUCTION**

This is a lawsuit brought by Caleb Fink's father, as the personal representative of his estate, to seek damages for violating Caleb's rights while serving a two-month period of incarceration at the Alachua County Jail. *See, generally*, First Am. Compl. (FAC) (Doc. 34). One of the avenues for relief is the Sheriff's violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq. and 42. U.S.C. § 12131-12134, as well as Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 701, et seq. and 29 U.S.C. §§ 791–94, et seq., and their respective implementing

regulations. *See* FAC, Count II. The Sheriff seeks dismissal because he asserts Plaintiff has failed to identify services Caleb was excluded from at the jail, relying on caselaw that the Sheriff asserts holds that the failure to provide medical services does not give rise to an ADA/RA claim.[1] (*See* Doc. 42 at 5–6). For the reasons stated below, the Court should deny the Sheriff's motion because Plaintiff has identified the services Caleb was denied, and the failures alleged in Count II are cognizable under the ADA/RA.

## RELEVANT FACTUAL BACKGROUND

Caleb was a young man, who was in and out of the Alachua County Jail. FAC ¶ 22. While booked at the jail, the Sheriff's staff established that Caleb suffered from serious mental health disorders, specifically: bipolar disorder, explosive disorder, and depression. *Id.* at ¶ 23.

In August 2022, Caleb was sentenced due to a parole violation and ordered to serve around 60 days at the Alachua County Jail. *Id.* at ¶ 24. When he arrived at the jail in August 2022, the Sheriff's staff and contracted medical providers through his contract with Wellpath knew about Caleb's mental health diagnoses and history. *Id.* at ¶ 25. Caleb was held in segregation when he first arrived at the jail because of his mental health history, *see id.* at ¶¶ 26–27, but was ultimately removed from those safeguards without having a mental health review. *Id.* at ¶¶ 31–33. Caleb displayed

---

[1] Cases under the RA and the ADA are generally governed by the same standards. *See Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

erratic behavior and received discipline while in the jail awaiting mental health review. *Id.* at ¶ 30.

Without review or safeguards for his mental health condition, Caleb was placed in a cell and part of the jail that could not accommodate his needs and was punished by staff because of his mental health condition. *Id.* at ¶ 40. Ultimately, Caleb committed suicide at the jail weeks before his release. *Id.* at ¶¶ 40–41.

## MEMORANDUM OF LAW

### A. Applicable Legal Standard.

To survive a 12(b)(6) motion to dismiss, a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," but she "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Instead, a complaint must contain "enough facts to state a claim to relief that is plausible on its face," *Brooks v. Warden*, 800 F.3d 1295, 1300 (11th Cir. 2015) (quotation omitted), which can allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Waldman v. Comm'r*, 871 F.3d 1283, 1289 (11th Cir. 2017). This threshold "is not akin to a 'probability requirement'"—the plaintiff must merely allege "'enough fact to raise a reasonable expectation that the discovery will reveal evidence' of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).

The Eleventh Circuit thus applies a "two-pronged approach" in evaluating motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). This approach applies to all Rule 8(a) pleadings—no heightened pleading standard exists for civil right or municipal liability claims. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993).

To state a claim under Title II of the ADA and section 504 of the RA, a plaintiff must allege: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of his disability." *Ingram v. Kubik*, 30 F.4th 1241, 1256 (11th Cir. 2022). A plaintiff may seek damages for a Title II violation upon a showing of deliberate indifference. *Silberman v. Miami-Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019 (citing *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012)).

**B. Plaintiff Has Stated an ADA/RA Claim in Count II of the FAC.**

The Sheriff asserts that Plaintiff's claims in Count II must fail because "any alleged failure to provide medical or mental health services cannot support an ADA/Section 504 claim." (Doc. 42 at 5) (citing *Schiavo ex rel. Schindler v. Schiavo*, 403

4

F.3d 1289, 1294 (11th Cir. 2005)). Notably, the Sheriff does not assert that Caleb was not a qualified individual, and therefore concedes that point for purposes of his motion.

Although the Supreme Court in *Schiavo* has held that the ADA does not govern medical decisions, it has, however, made clear that "medical services" fall under Title II. *See Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210, 118 S.Ct. 1952 (1998). A qualified inmate—and the Sheriff does not argue Caleb was not covered by the ADA—who is denied the benefit of medical services because of his disability can state a Title II ADA claim. *See, e.g., Lonergan v. Fla. Dep't of Corrs.*, 623 F. App'x 990, 994 (11th Cir. 2015) (holding that prison's failure to give an inmate treatment prescribed by his dermatologist was "sufficient for the [inmate] to plead a prima facie ADA claim"); *Stafford v. Wexford of Ind., LLC*, 2017 WL 4517506, at *3 (S.D. Ind. Oct. 10, 2017) ("Plaintiffs do not complain[ ] about the quality of care administered by Wexford; rather, they assert that Wexford has refused to treat Plaintiffs' disabilities, which is actionable under the ADA."); *Johnson v. Bryson*, 2017 WL 3951602, at *1 (M.D. Ga. Sep. 8, 2017) ("[T]he ADA is not wholly inapplicable to claims based on deliberate indifference to an inmate's medical condition.").

Here, for the purposes of Count II, Plaintiff does not claim that the Sheriff failed to provide medical care. Nor does Plaintiff claim for purposes of Count II that the Sheriff should be liable for failure to provide medical treatment, as stated in *Finn v.*

*Haddock*, 459 F. App'x 833 (11th Cir. 2012). No, Plaintiff alleges in Count II that the Sheriff was deliberately indifferent to Caleb's needs for disability accommodations,

> such as not providing extended mental health supervision, permitting his staff and contractors to allow individuals with serious risk of self-harm and serious mental health disorders to be housed in general population without measures to ensure their safety from other prisoners and self-harm, keeping prisoners with mental health disorders in confinement or unable to access services instead of accommodating their needs, and punishing prisoners with disciplinary action because of their disability.

FAC ¶ 60. Plaintiff complains that Caleb was denied a proper mental health review, *see id.* at ¶ 38, not placed in the appropriate housing for someone with his mental health needs, *see id.* at ¶¶ 35, 39, and punished for acting out because of his disability, *see id.* at ¶ 30, among other things. Plaintiff has clearly stated failures to accommodate Caleb. Those are not claims of medical malpractice or medical treatment, but the quality of Plaintiff's "equal opportunity to *participate* in obtaining and utilizing services at [the jail]." *Silva v. Baptist S. Fla., Inc.*, 856 F.3d 824, 834 (11th Cir. 2017) (emphasis in original). The Sheriff's motion should be dismissed on that ground.

Further, the Sheriff argues that Plaintiff has "failed to identify any services, programs, or activities from which Plaintiff's decedent was excluded and which other non-disabled detainees could enjoy." (Doc. 42 at 5). The Sheriff is wrong for two reasons.

First, Plaintiff has adequately identified services from which Caleb was excluded by reason of his disability. For instance, Plaintiff alleged that the Sheriff

failed to accommodate Caleb's known disability, which impacted his access to safe housing and living conditions. That constitutes a denial of access to services. *See, e.g.*, *Arenas v. Ga. Dep't of Corr.*, 2018 WL 988099, at *8 (S.D. Ga. Feb. 20, 2018) (stating that access to safe housing may constitute a "service" or "benefit" under the ADA); *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998) (holding an arrestee's transportation to the police station constitutes a "service" within the meaning of the ADA because the arrestee has a right to the benefit of transportation that meets his disability needs). The plaintiff in *Arenas* had similar claims: there, a mother sued the prison under the ADA/RA for failing to provide appropriate living accommodations for her son's known mental disability, resulting in his suicide. 2018 WL 988099, at *8. The court concluded that those claims would survive the dismissal stage.

  <u>Second</u>, the ADA "does not mandate that a plaintiff be denied access to services as the sole means of establishing liability." *Walton for Est. of Smith v. Fla. Dep't of Corr.*, 2019 WL 2103024, at *12 (M.D. Fla. May 14, 2019). A plaintiff may, alternatively, establish liability "by demonstrating he was 'subjected to discrimination.'" *Id.* (citing 42 U.S.C. § 12132); *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1084–85 (11th Cir. 2007) (recognizing the Eleventh Circuit "has explained that the final clause of § 12132 protects qualified individuals...from being subjected to discrimination...and is not tied directly" to the provision of or access to services) (internal quotation marks omitted). Thus, under the discrimination theory, a "refusal to accommodate the needs of a disabled person amounts to discrimination against that

7

person because of his disability." *Goldberg v. Fla. Int'l Univ.*, 838 F. App'x 487, 492 (citing *Cmty. Coll. v. Davis*, 442 U.S. 397, 412–13 (1979)). Here, Plaintiff has alleged that Caleb was disabled, that the Sheriff and staff knew of Caleb's disability, but that they punished him because of his erratic behavior and refused to fully review his needs or place him in appropriate housing. That is discrimination because of Caleb's disability.

## **CONCLUSION**

For these reasons, Plaintiff Daniel D. Fink requests that the Court deny the Sheriff's motion to dismiss Count II of the First Amended Complaint.

Dated: October 2, 2023.

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
Slater Legal PLLC
113 S. Monroe Street
Tallahassee, Florida 32301
james@slater.legal
Tel. (305) 523-9023

*/s/ Orlando Sheppard*
Orlando Sheppard (FBN 118424)
Burns Sheppard Favors
121 S. Orange Avenue, Suite 1500
Orlando, Florida 32801
orlando@bsflegal.com
Tel. (833) 778-7359

*Attorneys for Plaintiff*

**Certificate of Compliance with Local Rule 7.1(F)**

Pursuant to Local Rule 7.1(F), I hereby certify that the above document contains 1,862 words, inclusive of headings, footnotes, and quotations, but exclusive of the case style, signature block and certificates.

By: */s/ James Slater*
James Slater