IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DANIEL D. FINK, individually and as
Personal Representative of the Estate of
Caleb D. Fink,

    Plaintiff,

v.                                                     Case No. 1:23-cv-63-AW-ZCB

WELLPATH, LLC; CLOVIS WATSON,
JR., in his official capacity as Sheriff of
Alachua County, Florida; and WATSON
W. LOUIDOR,

    Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS COUNT V

Caleb Fink committed suicide while held in the Alachua County jail. His father—Plaintiff Daniel Fink—sued Wellpath, LLC, Alachua County Sheriff Clovis Watson, and Wellpath employee Watson Louidor, alleging claims related to Caleb's death.[1] ECF No. 34 (Am. Cmpl.). Fink alleges in Count V that Wellpath—which contracted with Alachua County to provide healthcare services at the jail—was deliberately indifferent to Caleb's serious medical needs in violation of the Eighth Amendment. Am. Cmpl. ¶¶ 15, 35-38, 52-68. Wellpath moves to dismiss that claim, and this order grants that motion.

---

[1] Because the Plaintiff and the deceased share a last name, I refer to Caleb Fink by his first name.

1

To survive a motion to dismiss, a complaint must include "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). No such presumption is extended to legal conclusions or mere recitations of the elements of a claim. *Twombly*, 550 U.S. at 555. Conclusory allegations are also disregarded. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018).

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farrow v. West*, 320 F.3d 1235, 1242-43 (11th Cir. 2003). But a local government is not vicariously liable under § 1983 for the unconstitutional acts of its employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Liability attaches only when the execution of the local government's policy or custom is the "moving force" behind the violation. *Monell*, 436 U.S. at 690-94.[2]

---

[2] Wellpath is a private company, but when a private company performs a traditional governmental function (like providing medical services to inmates), it can become liable under § 1983 to the same extent as would be the governmental entity. *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997).

A plaintiff can satisfy *Monell* by identifying (1) an official policy, (2) a widespread practice that "is so permanent and well settled as to constitute a custom or usage with the force of law," or (3) facts showing the municipality "tacitly authorize[d]" or "displaye[d] deliberate indifference towards" the unconstitutional actions of its employees. *Baxter v. Roberts*, 54 F.4th 1241, 1270 (11th Cir. 2022) (quoting *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001)). A plaintiff can also establish liability under *Monell* by showing that a municipal official with final policymaking authority violated the plaintiff's constitutional rights. *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022).

Fink identifies several alleged Wellpath policies and practices: disregarding reports of serious symptoms, refusing to provide adequate mental health treatment or timely mental health reviews, improperly housing vulnerable detainees, and routine understaffing. Am. Cmpl. ¶ 91; ECF No. 45 at 8. But, beyond conclusory allegations, nothing in the Amended Complaint suggests these alleged practices represent official Wellpath polices. Assuming then that they represent Wellpath practices or customs, Fink must show they are persistent and widespread. Random acts or isolated incidents are not enough. *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986). Yet other than Caleb's experience, the Amended Complaint does not allege instances where serious symptoms were disregarded, vulnerable

3

detainees were improperly housed, or Wellpath was understaffed. Fink alleges other suicides, but he includes no facts linking them to any of these practices.

Even looking just at Caleb's experience, the facts do not support a widespread delay or denial of mental health services or improper housing. The Amended Complaint alleges that Wellpath provided at least some mental health evaluation or accommodation during at least part of the time Caleb was incarcerated. After his August 9 booking, Caleb was "in administrative confinement requiring his condition and status be checked every 15 minutes," and later placed in a "mental health pod for prisoners and detainees who are at risk of serious self-harm or suicide." Am. Cmpl. ¶¶ 26-27. At least one nurse initially denied clearance for Caleb's transfer to general population. *Id.* ¶¶ 29-32.

As to the lack of mental health assessments, Fink does allege Defendant Louidor twice attempted to transfer Caleb to general population (succeeding only on the second attempt) while failing to conduct or order a mental health review. *Id.* ¶¶ 28-33. But this is insufficient to show a widespread, permanent, and well-settled practice on Wellpath's part. Even accepting as true the inadequate and delayed assessments at a Wellpath facility in another state, there is not enough support to plausibly show Wellpath had a mental health assessment practice that

served as the "moving force" behind Caleb's constitutional deprivation.³ Conclusory statements that a practice is "pervasive" or was exercised against other detainees "upon information and belief" are not enough. *See id.* ¶ 35.

Fink fares no better under the third method of establishing a policy or practice: showing Wellpath's tacit authorization or deliberate indifference toward the unconstitutional actions of its employees. At minimum, this would require some level of knowledge on Wellpath's part. *See Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (finding no support for § 1983 liability against a city when there was no evidence the city "knew or should have known that the natural consequence of its policy and practices would be the deprivation of constitutional rights"); *see also Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1188-89 (11th Cir. 2011) (noting how in the failure-to-train context, § 1983 deliberate indifference requires evidence the municipality knew it needed to train employees in a certain area).⁴ But there is nothing in the Amended Complaint to

---

³ For purposes of this order, I assume there was a constitutional deprivation.

⁴ As Wellpath notes, Fink makes a single passing reference to Wellpath's failure to adequately train. *See* Am. Cmpl. ¶ 92. To the extent Fink alleges a failure to train, the claim fails because Fink has not alleged facts sufficient to show Wellpath had "notice of a need to train or supervise in a particular area." *See Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A municipality's culpability . . . is at its most tenuous where a claim turns on a failure to train.").

show Wellpath's knowledge that its policies or practices—or Louidor's specific actions—were likely to result in the deprivation of constitutional rights.

That leaves only the final policymaker theory. Policymaking authority can be expressly granted by the legislature, or it can be delegated by a final policymaker to a subordinate. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). But "mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority." *Mandel v. Doe*, 888 F.2d 783, 792 (11th Cir. 1989). Municipal officials have the requisite final policymaking authority only when their decisions are not subject to meaningful review. *Chabad Chayil, Inc.*, 48 F.4th at 1229-30 (citing *Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997)).

The Amended Complaint does not sufficiently allege the existence of a final policymaker whose singular actions are sufficient to satisfy *Monell*. First, Fink has not identified the person—or the category or position of person—he considers to be the final policymaker. There is a passing reference to "utilization management staff members" being final policymakers. Am. Cmpl. ¶ 15. But it is unclear if this includes Louidor or the "Wellpath staff" referenced in the complaint, *id.* ¶¶ 25, 32, or if the final policymakers are other unspecified parties. Regardless, it is a conclusory statement that need not be accepted as true. *See Chabad Chayil, Inc.*, 48 F.4th at 1229-31 (rejecting as conclusory plaintiff's unsupported allegation that a

6

superintendent was "responsible for the administration and management" of a school "and [was] a final decision maker" under *Monell*).

Second, there are no facts alleging that Louidor, the unnamed Wellpath staff who interacted with Caleb, or anyone else who might be considered a policymaker had authority immune from meaningful review (i.e., *final* policymaking authority). Third, and perhaps most importantly, it is unclear what policymaker decision is at issue here. Municipal liability under a final policymaker theory requires "a deliberate choice to follow a course of action [that] is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). The Amended Complaint suggests the primary decision at issue is Caleb's release into general population without "appropriate medical review" or "increased observation." Am. Cmpl. ¶¶ 95-96. But the only specific facts alleged about this decision involve actions of Louidor and perhaps other unnamed Wellpath staff. And as already discussed, Fink alleges no facts to support the contention that Louidor or the Wellpath staff who interacted with Caleb had final policymaking authority, delegated or otherwise.

Plaintiff relies on *Hoefling v. City of Miami*, 811 F.3d 1271 (11th Cir. 2016), to excuse naming a final policymaker, but the plaintiff in *Hoefling* had otherwise sufficiently pleaded the existence of a municipal policy, practice, or custom. *Id.* at

7

1280. In *Hoefling*, the plaintiff, alleging a Fourth Amendment violation for destruction of his boat, not only pleaded facts related to the seizure and destruction of his own boat, but he also included allegations related to the seizure of a friend's boat, warnings from local mariners about other similar victims, and the existence of a specific city program underlying the seizures. *Id.* In other words, the plaintiff did not need to rely on the acts of a final policymaker to satisfy *Monell*.

Because Fink has not plausibly alleged the existence of a policy as required under *Monell*, I do not need to reach the question of whether he otherwise sufficiently pleaded deliberate indifference.

Wellpath's motion to dismiss (ECF No. 40) is GRANTED. Count V is dismissed.

SO ORDERED on November 3, 2023.

s/ *Allen Winsor*  
United States District Judge
